49 N.J. Super. 52 (1958)
138 A.2d 752
ANTHONY FASANO
v.
FREDERICK J. GASSERT, JR., DIRECTOR OF MOTOR VEHICLES OF THE STATE OF NEW JERSEY, CONSOLIDATED WITH ESSEX COUNTY COURT DOCKET NO. 99752, CARMINE PAGLIA
v.
GERTRUDE MADISON AND PIERCE MADISON.
Superior Court of New Jersey, Law Division.
Decided January 24, 1958.
*53 Mr. Emanuel M. Ehrenkranz (Mr. Harry Kay, appearing), attorney for plaintiffs.
Mr. William O. Barnes, Jr., attorney for the Unsatisfied Claim Judgment Fund.
*54 Mr. Grover C. Richman, Attorney-General (Mr. George H. Barbour, Deputy Attorney-General, appearing), attorney for the State of New Jersey, Intervener.
WAUGH, J.S.C.
I now have before me applications for payment of judgment in each of the above two cases in accordance with N.J.S.A. 39:6-69, 70, 71 and 84. The Fasano action was brought against the Director of Motor Vehicles in accordance with the procedure to be followed in "hit and run" cases, while the Paglia case is against an identified but uninsured, judgment-proof driver. In both cases plaintiffs proceeded to judgment and then applied to this court for orders under N.J.S.A. 39:6-71 (in the Paglia case) and N.J.S.A. 39:6-84 (in the Fasano case) directed to the Treasurer, requiring him to make payment from the Fund of such amounts as shall be due the plaintiffs in accordance with the terms of the Unsatisfied Claim and Judgment Fund Act.
In both cases it was found by the court at the hearing on application for payment of judgment that all conditions precedent had been met and that plaintiffs were entitled to such an order, but contest then arose as to the amount due from the Fund under the terms of the statute.
In the Fasano case, the Board urged payment of the $5,000 judgment as follows: $5,000, less $884 temporary disability benefits, less $430.85 hospitalization, less $362 medical-surgical, less the $200 statutory deduction.
In the Paglia case, the Board urged payment of the $2,500 judgment, less $359 medical-surgical, less $149 hospitalization, less the $200 statutory deduction.
The plaintiffs contended that with the exception of the $200 statutory deductions, all other deductions urged by the Board deprived the plaintiffs of their constitutional rights. The court ordered payment of the uncontested sums and further hearing was set as to the constitutionality of the other deductions and, pursuant to Rule 4:37-2, the Attorney-General of the State of New Jersey intervened.
*55 The Fund contends that deduction of temporary disability benefits, medical-surgical and hospitalization payments received in connection with the accident-caused injuries is proper under the terms of N.J.S.A. 39:6-70(m), 71, 73, 84. Reference to these sections and, in particular, to N.J.S.A. 39:6-71 (order for payment of judgment) indicates that
"* * * any amount for compensation or indemnity for damages or other benefits which plaintiff has received or can collect from any person other than the judgment debtor shall be deducted from the amount due upon the judgment for payment of which claim is made." (Emphasis added)
Obviously, the Fund urges that the disputed deductions fall under the category of "other benefits."
Plaintiffs, on the other hand, set forth two constitutional objections: (A) The unreasonable classification by the statute of claimants against the Fund into two groups  those who provide themselves with "other benefits" and those who do not, at their own instance, maintain "other benefits"  and the resulting unequal treatment of those in the former group. (B) The delegation by the Legislature to the Fund Board of the power to interpret "other benefits" without the guide of sufficient standards.
As to the first objection, (A), it is clear that the classification is not unreasonable and does not deprive the prudent who independently seek to spread their risks of the equal protection of the laws. Certain it is that their recovery from the Fund will be unequal compared to those who fail to provide themselves with "other benefits," but their total compensation from all sources will not be unequal. The Legislature, in enacting the Unsatisfied Claim and Judgment Fund Act, need not provide equal assistance for all those affected by injury on our highways. It may, as in the instant statute, strike at the evil where it is most felt by providing assistance to the extent that no other aid and assistance are available from any other sources. Our present Supreme Court has recognized the validity of such legislation. *56 In Board of Health of Weehawken Township, etc., v. New York Central Railroad Co., 4 N.J. 293, at page 302 (1950), Justice Heher, writing for a unanimous court, said:
"The legislative authority `is not bound to extend its regulation to all cases which it might possibly reach. The Legislature is "free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest." If "the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied."'"
Further, in Guill v. Mayor and Council of City of Hoboken, 21 N.J. 574, at page 582, (1956), it was made clear that
"* * * the classification satisfied the constitutional test of equality and reasonableness if it rests upon some ground of difference having a real and substantial relation to the basic object of the legislation or some relevant consideration of public policy. Even though the distinction be narrow, it suffices if it is reasonably concerned with the end legitimately in view."
Here the end in view is assistance for those who cannot be compensated from any other source, thus it is not unreasonable to partially exclude those who provide themselves with other protection to the extent of that other protection. The classification recognized "degrees of harm" and "hits the evil where it is most felt." Board of Health of Weehawken Township, etc., v. New York Central Railroad Co., supra. In this light, the classification is not unconstitutional. Also see Robson v. Rodriquez, 44 N.J. Super. 262 (Law Div. 1957).
We now come to plaintiffs' second contention, (B): The delegation of authority to the Board to interpret "other benefits" without the aid of sufficient standards constitutes the unconstitutional extension of a legislative power to an administrative agency. In considering this contention, the following from Hoffman v. Hock, 8 N.J. 397, at page 406, (1952), should be kept in mind as a guiding principle:
"A construction that will render any part of a statute inoperative, superfluous or meaningless, is to be avoided."
*57 We need not reach the issue as to whether or not the authority to construe "other benefits" in the hands of an administrative agency would be constitutional, because it is clear that this authority does not rest in, nor has it been extended to, the Fund Board.
N.J.S.A. 39:6-69 provides that application shall be made to "the court for an order directing payment out of the fund." (Emphasis added)
N.J.S.A. 39:6-70 provides that the court shall proceed upon such application in a summary manner.
N.J.S.A. 39:6-71 provides that
"* * * the court shall make an order directed to the treasurer requiring him to make payment from the fund of such sum, if any, as it shall find to be payable upon said claim." (Emphasis added)
It is manifest that the court makes the order and the court fixes in that order the amounts due. N.J.S.A. 39:6-71 then provides that in fixing this amount due there shall be deducted
"* * * any amount for compensation or indemnity for damages or other benefits which the plaintiff has received or can collect from any person. * * *" (Emphasis added)
It is clear that the Legislature intended that the court construe the words "other benefits" and deduct "other benefits" from the total judgment in its order to the treasurer. In short, there is no delegation to the Board and thus no constitutional objection is available on this ground. The same applies to orders to pay under N.J.S.A. 39:6-84.
There remains the final issue: the court's duty to construe what the Legislature intended by "other benefits." In Giles v. Gassert, 23 N.J. 22, at page 33 (1956), Justice Heher stated:
"The sense of a law is to be collected from its object and the nature of the subject matter, the contextual setting, and the statutes in pari materia; and the import of a particular word or phrase is controlled accordingly. Isolated terms cannot be invoked to defeat a `reasonable construction.' Wright v. Vogt, 7 N.J. 1 (1951). See also State v. Brown, 22 N.J. 405 (1956). The statute is to be liberally construed to advance the remedy, due regard being had to *58 the protection of the Fund against fraud and abuse and to the fulfillment of the essential legislative policy. The literal sense of terms is not to have ascendancy over the reason and spirit of the expression as a whole."
At common law, the rule is that the tortfeasor may not set up in mitigation of damages such items as the Board here urges should be deducted under the heading of "other benefits." In Weber v. Morris and Essex Railroad Co., 36 N.J.L. 213 (Sup. Ct. 1873), Chief Justice Beasley stated:
"The railroad company was a wrongdoer, and had no concern in the contracts of the plaintiff with respect to his indemnification in case of the loss of his property by fire. A person commiting a tort cannot set up in mitigation of damages that somebody else, with whom he had no connection, has either in whole or in part indemnified the party injured." (Emphasis added)
This principle was cited in Rusk v. Jeffries, 110 N.J.L. 307, at page 311 (E. & A. 1932), and there the Weber case, supra, and 8 R.C.L. were referred to as authority.
8 R.C.L., at page 555, states:
"And so a wrongdoer will not be permitted to benefit by payments made to the injured person from collateral sources. * * *"
Thus, it is evident that the rule that payment from collateral sources could not be shown in mitigation of damages developed out of the theory that a wrongdoer should not benefit from the self-insured solvency of his plaintiff. Harper & James, The Law of Torts, 1343, 1345, in tracing the history and reason of this rule, comments:
"Thus the plaintiff who has been paid his salary or a pension during disability, or had his medical expenses paid for by another, or out of the proceeds of an accident insurance policy, may still recover full damages for these items from a defendant who is liable for the injury. To this extent plaintiff may get double payment on account of the same items. The defendant wrongdoer should not, it is said, get benefit of payments that come to plaintiff from a collateral source (i.e., one collateral to the defendant). * * * It may be said that defendant deserves being made to pay in full because of the moral quality of his act." *59 We see, then, that the emphasis was on the wrongdoer and the moral quality of his fault. See, for example, the term "wrongdoer" as used in the Weber case, supra. But here the ultimate payor is not a wrongdoer in any sense of the word; it is quite the opposite of a wrongdoer. Those cases which hold that collateral source recoveries by the plaintiff cannot be shown in mitigation of damages have no application where a social insurance fund which is in no way a tortfeasor is looked to for ultimate compensation.
"What is left under this head, then, springs from a feeling of indignation or resentment and a desire to punish as such. Surely there is no place for such a notion in any philosophy of social insurance." Harper & James, The Law of Torts, 1345. Generally, see Ibid., 1337-1360.
Ultimately, then, we return to our point of beginning:
"The Legislature `is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be the clearest. * * * the law presumably hits the evil where it is most felt.'" Board of Health of Weehawken Township, etc., v. New York Central Railroad Co., supra.
Finally, see Dixon and Gales v. Gassert, 26 N.J. 1 (1958), wherein Justice Proctor, referring to the Unsatisfied Claim and Judgment Fund Act, stated, at page 8:
"* * * the statute does not reflect an intention to make every claimant completely whole, but rather to provide some measure of relief, up to a maximum of $5,000, where a claimant has not received any other compensation for his injuries."
Here the evil is most felt with those who suffer injury on our highways and cannot obtain compensation elsewhere. With this ultimate purpose of the act in mind, it becomes evident that the Legislature intended the term "other benefits" to include plaintiffs' compensation by way of temporary disability, hospitalization and medical-surgical payments. Deductions for these collateral sources payments were properly taken in the original order. A final order will be entered.