68 N.J. Super. 73 (1961)
171 A.2d 667
CATHERINE HOLMBERG, PLAINTIFF-APPELLANT,
v.
JOHN ATEN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 15, 1961.
Decided June 2, 1961.
*75 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Hugh C. Spernow argued the cause for plaintiff-appellant (Messrs. Spernow & Geaney, attorneys).
Mr. Frederick J. Wortmann argued the cause for defendant-respondent (Messrs. Braff, Litvak & Ertag, attorneys; Mr. Wortmann, of counsel and on the brief).
Mr. Theodore I. Botter, Assistant Attorney General, filed a statement in lieu of brief (Mr. David D. Furman, Attorney General, attorney).
The opinion of the court was delivered by FREUND, J.A.D.
Plaintiff Catherine Holmberg appeals from a final order of the Law Division, Passaic County, denying her application for payment from the Unsatisfied Claim and Judgment Fund on the ground that mandatory deductions for insurance benefits received had exceeded the amount of her negligence judgment. The main issues herein are whether these benefits were properly deductible under the operative statutes, N.J.S.A. 39:6-70(m), 39:6-71, and 39:6-73, as those sections stood prior to their amendment in 1958 (L. 1958, c. 98, 99), and if so, whether such a construction impairs the constitutionality of the legislation.
The facts have been stipulated for the purpose of this appeal. Plaintiff was injured on September 29, 1955, while a passenger in an automobile owned and driven by her son, Richard T. Holmberg. The Holmberg vehicle was struck by an uninsured automobile driven by defendant Aten. *76 Plaintiff suffered severe and permanent disabling injuries and was forced to undergo treatment over a considerable period of time. Expenditures totaling more than $5,700 were made for medical treatment, hospitalization, and private nursing services.
A Superior Court action was instituted in separate counts by plaintiff and her husband, Carl O. Holmberg, suing per quod, against Aten. At trial, after defendant had been sworn and examined, all parties concerned consented to a judgment in plaintiff's favor in the sum of $5,000 for her permanent injuries and disability, and her pain and suffering. Also by consent, Carl O. Holmberg's count for consequential damages was dismissed with prejudice. Since Aten was satisfactorily shown to be judgment-proof, plaintiff made application to the Fund for payment of her $5,000 judgment. The Fund denied liability on the ground that plaintiff had received "other benefits" which, when credited against the judgment in accordance with the statutory directive of N.J.S.A. 39:6-71, exceeded that judgment in amount. The trial judge concurred with the view that the deductions were properly made and that, as they were in excess of the maximum statutory sum allowable from the Fund, the latter incurred no liability.
By express provision contained in the amendment thereto, L. 1958, c. 98, p. 553, § 3, the pertinent statutes must be considered as they read prior to the legislative alteration. They at that time carved out a broad category of possible payments to the injured claimant, receipt of which reduced the amount allowable from the Fund. N.J.S.A. 39:6-70(m) required the applicant for payment to state
"whether he has recovered a judgment in an action against any other person against whom he has a cause of action in respect of his damages for bodily injury or death or damage to property arising out of the accident and stating the amounts recovered upon such judgments or the amounts, if any, received for indemnity or other benefits for such injury or death or damage to property from any person other than the operator or owner of the motor vehicle causing such injury, death or damage." (Emphasis added)
*77 N.J.S.A. 39:6-71, dealing with judicial orders to the Fund directing payment, provided:
"Any amount for compensation or indemnity for damages or other benefits which the plaintiff has received or can collect from any person other than the judgment debtor shall be deducted from the amount due upon the judgment for payment of which claim is made." (Emphasis added)
And N.J.S.A. 39:6-73(c)(3) ordained that the maximum payable from the Fund "shall be reduced by any amount received or recovered as specified in subparagraph (m) of * * * [N.J.S.A. 39:6-70]."
These statutory provisions (including the parallel section to 39:6-73, namely 39:6-84, applicable to "hit and run" cases), were initially construed in Dixon v. Gassert, 26 N.J. 1 (1958), wherein it was held that amounts received under an accident and health policy and a Blue Cross hospitalization contract, both issued in the claimant's name, constituted "indemnity or other benefits" within the statutory intendment. The Supreme Court was not persuaded by the plaintiff's argument that payments made by virtue of insurance contracts were not "for [his] injury" within the meaning of the enactment. The court opined, supra, 26 N.J., at p. 7, that "the words employed do not lend themselves to the limited construction urged," but rather, "manifest an intention to provide for the allowance of deductions of a more comprehensive nature." Also see Minardi v. Dupont, 49 N.J. Super. 139 (App. Div. 1958) (sums received under insurance policies for temporary disability, health and accident benefits, medical and surgical expenses, and hospital care held deductible); Fasano v. Gassert, 49 N.J. Super. 52 (Law Div. 1958) (temporary disability, hospitalization, and medical and surgical payments held deductible).
Plaintiff urges that the form of the policies herein distinguishes this case from those cited, in that the proceeds were not distributed pursuant to her own insurance contracts *78 but rather through instruments issued in the names of her husband and son. The payments were in fact made in the following amounts and under the following policies: (1) $2,000 was paid to the plaintiff by Utica Mutual Insurance Company under the medical payments clause of an automobile liability policy issued in the name of her son, Richard T. Holmberg; (2) an additional $2,000 was paid to the plaintiff by Utica Mutual Insurance Company under the medical payments clause of an identical policy issued in the name of her husband, Carl O. Holmberg; and (3) $1,125 was paid to Carl O. Holmberg for medical treatment and hospitalization charges incurred by him by reason of the injuries sustained by his wife, by the terms of a John Hancock Mutual Life Insurance Company policy issued through the Fuel Merchants Association of New Jersey under a contract with Carl O. Holmberg as an employee of the Chas. O. Holmberg Lumber Co.
It is plaintiff's position that her husband's foresight in protecting himself in advance against medical expenses he might legally incur because of injury to himself and members of his household "should not deprive her of the benefits of a judgment for her actual physical injuries sustained and the pain and suffering she has undergone." She argues that the statutory phrase, "other benefits," should be read in conjunction with "indemnity," and that it was her husband, not herself, who was indemnified by the insurance carriers; since the latter's claim for consequential damages had been dismissed, it could not be said that he was seeking judgment against the Fund under his wife's maximum allowance, see Jones v. Williams, 53 N.J. Super. 16 (App. Div. 1958), and thus amounts paid to him should not be deductible. In short, plaintiff claims that the insurance proceeds were not benefits which the "plaintiff has received" (emphasis added) within the meaning of the statute. N.J.S.A. 39:6-71.
Plaintiff's argument overlooks the very significant question of the underlying purpose of our Unsatisfied Claim *79 and Judgment Fund Law, N.J.S.A. 39:6-61 et seq. The legislation does not represent, as was pointed out by Justice Proctor in Dixon v. Gassert, supra (26 N.J. Super., at p. 8), an effort to make every claimant whole but rather reflects an intention to provide some basic measure of relief (at that time, up to $5,000, less a $200 deduction, N.J.S.A. 39:6-73, 39:6-84) in order to forestall the possible hardship attendant upon a claimant's absorption of the entire economic loss occasioned by the accident. Also see Corrigan v. Gassert, 27 N.J. 227, 233 (1958); Gray v. Tice, 52 N.J. Super. 309, 313-15 (Law Div. 1958). Proper emphasis of this fundamental design of the statute both explains and justifies the expansive reading accorded it by the Dixon court. The crucial factor, in the court's words, was that the payments to plaintiff
"were made on account of the injuries sustained by him. The injuries constituted the contingency upon which the various insurance benefits became payable. The [statutory] language employed does not admit of any possible distinction between amounts which were received directly or indirectly `for such injury, in the absence of any words of limitation as to the source of such payments." (26 N.J., supra, at pp. 7-8)
(Compare the 1958 amendment to the statute, placing "words of limitation" upon the deductible benefit provisions. The purpose of the amendment was expressed in its legislative statement to be "to permit persons who are entitled to recover from the fund to be paid the full amount of their judgment subject to the limiting amounts payable from the fund, but without deducting indemnities, benefits and gratuities received or due from sources other than a tort feasor or someone making a payment on his behalf." L. 1958, c. 98).
It cannot be said, in view of the statutory language prior to its modification and the judicial interpretation thereof, that an insurance carrier's medical payments or reimbursement for medical expenditures, transferred by virtue of the claimant's injuries, does not constitute a *80 "benefit" to the claimant. That the policies were issued to and the premiums supplied by one other than the beneficiary is irrelevant to the issue at hand. The important point is that the payments were occasioned by the accident, were furnished in order to reduce the expense produced by the accident, and did in fact mitigate plaintiff's economic losses.
It is also clear that these payments were benefits "received" by the plaintiff within the meaning of the statute. They were literally received by her  by draft  under the two Utica Mutual policies by virtue of a standard medical payments clause obligating the insurer to pay the expenses "to or for the named insured and each relative * * *" sustaining bodily injury. The John Hancock policy (though not reproduced in the appendix) apparently provided that the proceeds be paid directly to Carl O. Holmberg for expenses incurred on behalf of a member of his family. The significant fact here is that medical expenditures for the benefit of plaintiff were the subject of payment under the policy.
Assuming arguendo that these payments in effect discharged Carl O. Holmberg's primary obligation to furnish medical treatment for his injured wife, Kerner v. Eastern Dispensary & Casualty Hospital, 210 Md. 375, 123 A.2d 333, 335-36 (Ct. App. 1956); see 41 C.J.S., Husband and Wife, § 60(a), pp. 524-25, this would in no way alter our construction of the statute to include them as "benefits" to her. That the husband was also incidentally relieved of a legal obligation would not detract from the actual monetary advantages accruing to his wife. He would be equally relieved if the proceeds had been paid directly to the wife under a policy issued in her own name. One can easily imagine an agreement where the contractor consents to reimburse the contractee for medical expenses incurred by the latter, but payable only on the contingency that no other insurance moneys be applied for the same purpose. Could it reasonably be said that the receipt of other insurance moneys, thereby excusing the contractor from performance, is not *81 also a "benefit" to the injured contractee within the wide statutory scope defined by Dixon v. Gassert, supra?
We return to the language of Justice Proctor in Dixon v. Gassert, supra (26 N.J., at p. 7), by way of emphasizing our conclusion herein that plaintiff has indeed received "other benefits" exceeding in total the amount of her judgment:
"There is no limitation as to the source from which the indemnity or benefits must be received. Nor is the receipt of any particular indemnity or benefit excepted from the operation of N.J.S.A. 39:6-70(m). We are convinced that the use of the words `indemnity or other benefits,' without any limitation or exception as to the source from which they may be received, completely dispels the plaintiff's contention that this language is limited only to the receipt of amounts paid by way of settlement."
We must next consider plaintiff's assault on the constitutionality of the pertinent statutes as construed by the trial judge and affirmed herein. Plaintiff claims that the Dixon rationale, both in itself and, more importantly, as applied herein, is violative of both the due process and equal protection clauses of the state and federal constitutions. N.J. Constitution (1947), Art. I, pars. 1, 5; U.S. Constitution, Amendment XIV. Her attack is focused mainly on the legislative separation of motorists covered by private insurance contracts or receiving other injury benefits from those who are not so aided from outside sources. She maintains that this distinction is an arbitrary one, not reasonably related to the basic purpose of the Unsatisfied Claim and Judgment Fund Law. Additionally, she asserts, the classification as further broken down in the instant case would distinguish between those persons who receive no benefits and those whose husbands carry insurance covering their spouse's injuries  an entirely capricious dichotomy.
The constitutional guarantee of "due process of law" demands only that the legislation shall not be unreasonable, arbitrary or capricious and that the means selected shall have a real and substantial relation to the object *82 (presumably a proper legislative function) sought to be attained. Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934); Wiley Motors, Inc. v. Unemployment Compensation Commission, 130 N.J.L. 30, 35 (Sup. Ct. 1943), affirmed o.b., 131 N.J.L. 228 (E. & A. 1944); Robson v. Rodriquez, 26 N.J. 517, 522 (1958). The alleged unreasonableness of the instant statute may best be analyzed by determining the propriety of the classifications therein for equal protection purposes. The constitutional requirement of equal protection is satisfied if the legislation treats all persons within a classification reasonably selected, in a like or similar manner. Washington National Insurance Co. v. Board of Review, 1 N.J. 545, 553 (1949). As explained by Justice Heher in Guill v. Mayor and Council of City of Hoboken, 21 N.J. 574, 583 (1956):
"Arbitrary selection can never be justified by terming it classification. Classification must itself be fair and impartial and not arbitrary or illusory, grounded in material distinctions and differences concerned with the central legislative policy; and it satisfies the constitutional standard if there be any conceivable state of facts affording a just ground for the action taken, a difference of degree having material relevancy to the police policy in view. If there be a reasonable distinction of circumstance, there is not the oppressive inequality at odds with the equal protection principle."
For one who protests the reasonableness of a legislative classification on equal protection grounds, the struggle is all uphill, the path strewn with the failures of the past. Not only must he rebut the standing and weighty presumption of constitutionality attached to every enactment, Harvey v. Essex County Board of Freeholders, 30 N.J. 381, 388 (1959), but in attacking the logic of the lawmakers' distinctions, it is not sufficient that he demonstrate that the legislative objective might have been more fully achieved by another more expansive or inclusive classification; the Legislature may recognize degrees of harm and strike at the evil where it is most felt. New Jersey Restaurant Association v. Holderman, 24 N.J. 295, 300 (1957). Thus, a mere *83 showing that the Legislature has not entirely obviated the harm, but has only detailed the primary stages of a remedial program, will not, in the absence of a demonstration of the capriciousness of the steps taken, upset those enactments. The Legislature is empowered, in its discretion, to make distinctions of degree in attaining its goals, as long as there is a rational basis therefor; and the distinctions will be presumed to rest on that basis if there be any conceivable state of facts which would afford reasonable ground for its action. Board of Health of Weehawken Twp. in Hudson County v. New York Central R. Co., 4 N.J. 293, 302 (1950).
The hard core of plaintiff's constitutional objection is the statutory distinction between those injured motorists who have had the foresight to insure themselves against injury and those who have not. There is no reason, she says, why a public fund for the victims of uninsured and impecunious automobile tortfeasors should be open to the latter group and closed to the former. She insists that the same total benefits do not accrue to both classes, as the former is out-of-pocket the cost of the insurance premiums.
The basic design of the Fund Law, N.J.S.A. 39:6-61 et seq., has been set forth infra, and was more fully described, in a constitutional context, as follows:
"The Unsatisfied Claim and Judgment Fund Law is remedial legislation that was enacted as a result of concern over the economic hardship imposed upon persons who sustain personal injuries or property damage, or both, caused by financially irresponsible and uninsured motorists, where the claimants have no other source of compensation. * * * Its primary purpose is to mitigate this evil which springs in the main from the negligent operation of motor vehicles by uninsured persons. To this end the act provides for the creation of a fund, supported by imposts upon uninsured motor vehicle owners and insurance companies, out of which uncollectible judgments obtained against uninsured or unknown motorists can be satisfied subject to certain limitations." (Robson v. Rodriquez, supra, 26 N.J., at pp. 524-25)
The Fund is not a substitutionary welfare agency  and in this sense it is available to wealthy and poor alike  but it *84 is a legislative mechanism for assuring victims of another's negligence financial remedy to some minimum extent for the damages caused by that negligence. It is this reparatory purpose which must be kept in mind in evaluating the reasonableness of the classification here under attack. That further legislative refinement of the sources from which outside benefits accrue might have been undertaken (as it later was) does not destroy the effectiveness of the primary distinction enacted. The fundamental dichotomy between those who are otherwise indemnified or reimbursed for their losses and those who are not marks an initial stage  and, as we have said, the Legislature may operate in stages. It is not the function of the judiciary to pass upon the wisdom of a legislative classification, only its reasonable relation to a reasonable objective. In the light of these principles, the instant classification is not open to successful assault.
The constitutionality of legislation seeking to provide assistance to the extent that same is unavailable from private sources is no longer open to serious question, provided that public policy dictates such assistance. In the rendering of public aid, it is obvious that distinctions of degree must be made in determining the qualified recipients. Analogous distinctions were here effected. Those whose vision and means were substantial enough to enable them to seek the assurance of adequate private reimbursement for medical and hospital expenses, regardless of the circumstances of negligence and fault, cannot be heard to complain of discrimination when they are denied recourse against the Fund in contradistinction to those who had not (presumably, by and large, because they could not afford to) taken similar precautions. Their claim of unequal protection cannot succeed, where, as here, they are not "similarly circumstanced" in the light of the enactment's prime purpose. Although they may emerge from the post-accident proceedings, after receipt of both private insurance and Fund payments, less their premium expenditures as compared to their uninsured brethren, this is the price of their choice *85 of almost guaranteed private coverage over highly uncertain and financially limited public reimbursement. Cf. Fasano v. Gassert, supra.
The Legislature, recognizing the practical inadequacy of the maxim, has acted decisively to aid those who cannot or have not helped themselves. It is by plaintiff's own choice that she has reposed her trust in Providence and in the Utica Mutual and John Hancock insurance companies. The Constitution does not deny her that privilege; but neither does it require that the exercise thereof be ignored in the formulation of public legislation aimed at relieving economic hardship.
Affirmed.