99 N.J. Super. 481 (1968)
240 A.2d 444
WILLIAM DODD, EDWARD DODD AND MARION ELIZABETH DODD, PLAINTIFFS-RESPONDENTS,
v.
GEORGE R. COPELAND, GEORGE D. COPELAND, AND SAMUEL J. COX, DEFENDANTS, SAMUEL J. COX AND UNSATISFIED CLAIM AND JUDGMENT FUND, APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 5, 1968.
Decided March 7, 1968.
*483 Before Judges SULLIVAN, FOLEY and LEONARD.
Mr. Bruce D. Herrigel argued the cause for appellants (Messrs. Herrigel & Herrigel, attorneys).
Mr. John J. Trombadore argued the cause for respondents (Messrs. Trombadore & Trombadore, attorneys).
*484 The opinion of the court was delivered by SULLIVAN, S.J.A.D.
The Unsatisfied Claim and Judgment Fund (Fund) appeals from an order of the trial court directing the Fund to pay to plaintiffs the sum of $6,211.87, being one-half of the amount of a judgment recovered by plaintiffs in a motor vehicle accident case. The issue involved is to what extent, if any, is the Fund liable to pay plaintiffs' judgment.
The facts are not in dispute. Plaintiff William Dodd was a passenger in an automobile owned and operated by George D. Copeland when it collided with a vehicle owned and operated by Samuel J. Cox. Dodd was injured as a result of the accident and filed suit against both Copeland and Cox. Since he was a minor at the time of the accident (he is now of age), his parents joined in a count for medical expenses.
Copeland had $10,000 insurance coverage and an answer was filed on his behalf by his carrier. Cox was uninsured. The Fund, having received due notice, filed an appearance on his behalf. Both defendants filed crossclaims for contribution under the Joint Tortfeasors Contribution Law.
When the case came to trial Copeland's insurance carrier settled with plaintiffs for $5,000 and received a covenant not to sue. The Fund refused to settle and the case continued against Cox, but resulted in a mistrial. In the meantime, the crossclaims for contribution were dismissed. At the retrial of the case against Cox the jury was asked to decide Cox's liability, the extent of plaintiffs' damages and whether Copeland was a joint tortfeasor. The jury found Cox liable and returned a verdict in favor of Dodd and against Cox for $12,000. Dodd's parents were awarded $423.75. The jury also found that Copeland was a joint tortfeasor. Judgment was entered for $12,423.75. Plaintiffs issued execution on their judgment and examined Cox in discovery proceedings, but were unable to collect their judgment.
Plaintiffs then made application for payment of their judgment from the Fund. They conceded that, having *485 settled with one of two joint tortfeasors, the remaining defendant Cox is only liable to pay one-half of the $12,423.75 judgment, or $6,211.87. They asked that the Fund be ordered to pay said amount. As heretofore noted, the trial court granted plaintiffs' application.
Initially, the Fund argues that it is not required to pay any part of plaintiffs' judgment against Cox because of their settlement with Copeland who was found to be a joint tortfeasor. The Fund's argument is that under the Unsatisfied Claim and Judgment Fund Law, the Fund becomes liable to pay a judgment only after the holder of the judgment has fully pursued and exhausted all remedies available to him for recovering damages against all persons against whom he has a cause of action in respect of his damages, by commencing an action against such persons and prosecuting the same to judgment; that, in any event, the Fund may not be called upon to pay in excess of $10,000 on account of injury to or death of one person in any one accident, and that plaintiffs' damages were assessed by the jury at $12,423.75; that the same jury also found that Copeland was a joint tortfeasor. Since Copeland had insurance coverage of $10,000, the Fund argues that plaintiffs could have collected at least $10,000 from him had no settlement been made, in which case the Fund could not have been called upon to make any payment whatever.
It is the Fund's argument that plaintiffs, by settling with Copeland, deprived the Fund of the benefits it would have received had plaintiffs exhausted all remedies available, and it cannot now be required to pay damages that plaintiffs could have recovered against Copeland.
We do not agree with this contention since its practical effect would be to bar any settlement in a case in which the Fund appears for one of the defendants unless the Fund participates in the settlement. The general policy of the law is to encourage the good faith settlement of claims and thereby avoid or terminate litigation. We do not consider that the provisions of the Unsatisfied Claim and Judgment *486 Fund Law are at odds with this general policy. Settlement with other persons can and often does reduce the amount which the Fund is called upon to pay.
The Fund Law does state that before an order for payment of a judgment is made, a plaintiff must have fully pursued and exhausted all remedies available to him for recovering damages against all persons against whom he has a cause of action in respect of his damages, by commencing an action against such persons and prosecuting the same in good faith to judgment. N.J.S.A. 39:6-71(b).
However, the sense of any statute is to be collected from its object and the nature of the subject matter. Particular phrases must be read in the light of the contextual setting. The import of such language is controlled accordingly. The literal sense of terminology cannot prevail over the reason and spirit of the expression as a whole. Giles v. Gassert, 23 N.J. 22, 33-34 (1956).
It seems clear that the requirement that a plaintiff fully pursue and exhaust all remedies available against all other persons includes good faith settlement with such persons, since the same statutory section also provides that any amount which a plaintiff has received by way of settlement of the cause of action from any person other than the judgment debtor, shall be deducted from the amount due upon the judgment for payment of which claim is made. N.J.S.A. 39:6-71.
In Gray v. Tice, 52 N.J. Super. 309 (Law Div. 1958), it was specifically held that plaintiff's settlement with one of the defendants in a motor vehicle case did not bar recourse against the Fund as to the judgment obtained against the remaining defendant. So, too, in Gilbert v. Unsatisfied Claim and Judgment Fund Board, 85 N.J. Super. 143 (App. Div. 1964), certification denied 44 N.J. 403 (1965), where plaintiffs had taken all reasonable steps to serve the driver of defendant owner's automobile with process but he could not be found, we held that the act did not make it mandatory that a judgment be entered against the driver to qualify *487 plaintiffs for payment by the Fund of their judgment against the uninsured owner.
No contention is made that the settlement in question with Copeland was not made in good faith. Under the circumstances we conclude that such settlement did not debar plaintiffs from looking to the Fund for payment of their judgment against Cox.
The question presented is how much of the $12,423.75 judgment should the Fund be obligated to pay. Plaintiffs conceded that under the Joint Tortfeasors Contribution Law their settlement with Copeland, who was subsequently found to be a joint tortfeasor, required that a pro rata credit be given against the amount of the judgment. Theobald v. Angelos, 44 N.J. 228 (1965). They sought, and the trial court entered, an order directing the Fund to pay one-half of the judgment, or $6,211.87.
The Fund argues that this method of computation was improper. It arrives at a net figure of $1,211.87 by taking the pro-rated amount of judgment under the Joint Tortfeasors Contribution Law and deducting therefrom the $5,000 received in settlement from Copeland. It is the Fund's contention that N.J.S.A. 39:6-71 requires this added deduction.
In our opinion, neither the method used by the trial court nor the method contended for by the Fund is correct. The Fund Law stipulates that the maximum amount of a judgment for which the Fund can be held liable for injuries to any one person is $10,000, but that such maximum amount shall be reduced by any amount received in settlement with other persons for the same injuries. N.J.S.A. 39:6-73 (c) (3).
Plaintiffs' damages were fixed at $12,334.75 by the jury. The maximum liability of the Fund under the statute for injuries to any one person is $10,000. The sum of $5,000 has been received in settlement from Copeland, so that the amount which the Fund should pay is $5,000.
*488 We reject the Fund's contention that the amount of settlement must be deducted from the pro-rated judgment. This would result in a double credit amounting to $11,211.87 ($6,211.87 plus $5,000), whereas plaintiffs have only received in settlement the sum of $5,000.
The Joint Tortfeasors Contribution Law and the Unsatisfied Claim and Judgment Fund Law must be read with reference to each other. The provision in the Fund Law requiring a deduction of the amount of any money received by way of settlement was not intended to be in addition to pro-rating plaintiffs' judgment by virtue of the same settlement, since the pro tanto credit required by the Fund Law serves the same basic purpose as the pro rata credit available under the Joint Tortfeasors Contribution Law where there has been a settlement with a joint tortfeasor. Of course, we recognize that under certain circumstances (as, for example, had plaintiffs settled with Copeland for $1,000 instead of $5,000) it would be to the Fund's advantage to use the pro rata credit provided for under the Joint Tortfeasors Contribution Law rather than the pro tanto credit under the Fund Law. The Fund may claim one credit or the other, but not both. Otherwise an inequitable situation would result.
The Fund has called our attention to the opinion in Gray v. Tice, supra, which, among other things, seems to hold that in a similar situation where the jury deducted the amount of settlement from plaintiffs' damages and returned a verdict for the net difference, the Fund is then entitled to credit the amount of the settlement against the judgment entered on the jury verdict. If this is what Gray holds, we disapprove of it to that extent. However, we have examined the order for payment entered in that case and find it did not provide for a double deduction of the amount of the settlement but rather allowed the Fund a single credit of the settlement figure to be applied against the full amount of plaintiffs' damages.
*489 The order of the trial court is modified so as to provide that plaintiffs be paid the sum of $5,000 out of the Fund on account of their judgment against Dodd. As modified, the judgment is affirmed. No costs on this appeal.
FOLEY, J.A.D. (dissenting).
Initially, I am in accord with the holding that plaintiff's settlement with the solvent defendant does not of itself preclude the Fund's response to liability on the judgment against the non-settling, insolvent, uninsured defendant.
In finding the Fund liable in the amount of $5,000 on a $12,423.75 judgment the majority made use of a pro rata settlement credit based upon the $10,000 statutorily imposed Fund liability limit in accidents involving the injury of one person. N.J.S.A. 39:6-73(c) (1). In determining $5,000 as the amount which the Fund is called upon to pay, the majority rejects the Fund's contention that it is entitled to a statutory pro tanto credit on its pro rata share of judgment liability, stating that this supposed inequitable result is barred since the Joint Tortfeasors Contribution Law and the Unsatisfied Claim and Judgment Fund Law must be read with reference to each other.
Reading separate statute laws with reference to each other requires compliance with the clearly enacted mandates of each. If conflicting or hard legal rules result from such allied reading, then the laws will be construed to effect a single desired objective, provided the laws themselves (1) pertain to cognate material, or (2) covering the same material, must be read in pari materia. Barring such similarities, the clear meaning of the laws must prevail. See 2 Sutherland, Statutory Construction (3d ed. 1943), §§ 5201, 5202, pp. 529-539.
I find the required similarity of legislative purpose inferentially espoused by the majority lacking in this case, and for that reason I dissent.
The order for payment of a judgment by the Fund is limited by the provisions of the Fund itself; N.J.S.A. *490 39:6-71. The most prominent of these limitations relating to the instant situation are: (1) the $10,000 limitation on amounts payable from the Fund, N.J.S.A. 39:6-73(c) (1), and (2) the requirement that all possible deductions from the amount due upon the judgment by way of settlement or payments be taken before the directive of payment from the Fund is issued, N.J.S.A. 39:6-71; 39:6-83, 39:6-70(m).
The judgment here awarded plaintiffs damages totalling $12,423.75. Under Theobald v. Angelos, 44 N.J. 228 (1965), the insolvent Cox was entitled to a pro rata settlement credit since the jury, by a special interrogatory, found the accident was caused by defendants' joint negligence. This reduced the amount of the judgment debt which Cox was required to assume to $6,211.87. Cox's lack of coverage and insolvency having been proven, the Fund became liable to respond in that amount which the uninsured insolvent negligent motorist was obligated to pay, here $6,211.87. Plaintiff bargained one-half of their judgment recovery by settling with defendant Copeland. Cox benefited by the settlement since both he and Copeland were negligent. Conversely, plaintiffs could have settled with the Fund for an amount in excess of a pro rata share of the judgment, and, presuming the cause of the accident to be the sole negligence of the non-settling party, have benefited handsomely from the settlement; N.J.S.A. 39:6-82; Theobald v. Angelos, supra, at p. 241.
As we have said, the effect of the Contribution Law was to reduce the amount of the non-settling jointly negligent Cox's liability on the $12,423.75 judgment to $6,211.87. It is this modified amount that the Fund is petitioned to pay. Since this is less than the $10,000 statutory limit (presuming Cox's lack of coverage and his insolvency), the Fund should by operation of N.J.S.A. 39:6-71 be required to respond in this amount less "any amount which the plaintiff has received or can collect by way of payments upon the judgment or by way of settlement of the cause of action in whole or in part, from or on behalf of any person other than *491 the judgment debtor." (emphasis added). N.J.S.A. 39:6-71; also N.J.S.A. 39:6-83. The plain meaning of this twice-stated mandate requires that the Fund respond to the $6,211.87 judgment debt of Cox in this amount, less the $5,000 received by Dodd in settlement from Copeland, viz., $1,211.87. Compare Dalton v. Gesser, 72 N.J. Super. 100, 106-107 (App. Div. 1962), which states that "the obligation of the Fund to pay does not become absolute until the rendition of a judgment and the entry of an order certifying compliance by the plaintiff with the statutory requirements and authorizing payments."
The majority finds this inequitable and avoids such a result by reading the Joint Tortfeasors Contribution Law and the Unsatisfied Claim and Judgment Fund Law as though they were in pari materia. Inequity resulting from legislative enactment per se is not a matter of judicial concern. If, in practice, an inequity results from legislative policy making, it is the exclusive function of the Legislature to amend the statutory law accordingly. Consequently, I put aside judicial concepts of equity law. Cf. Lynch v. Newark, 43 N.J. Super. 546, 550 (Cty. Ct. 1957), affirmed as modified 46 N.J. Super. 335 (App. Div. 1957).
Although both laws were enacted in the year 1952, their language and respective legislative histories preclude a finding that they comprehend cognate material. Cf. State v. Brown, 22 N.J. 405, 415 (1956); In re Posey, 89 N.J. Super. 293, 301-302 (Cty. Ct. 1965), affirmed o.b., 92 N.J. Super. 259 (App. Div. 1966); Gualano v. Bd. of Estimate of Elizabeth School Dist., 72 N.J. Super. 7, 23 (Law Div. 1962), affirmed 39 N.J. 300 (1963). While it is acknowledged that the internal sections of the Fund Law stand in pari materia, Douglas v. Harris, 35 N.J. 270, 281 (1961), the conspicuously divergent goals of these distinct creations of the Legislature preclude the application of this doctrine in these circumstances. The more general purpose of allowing contributions among joint tortfeasors does not modify the specific legislative intent to provide broadly based deductions *492 in establishing Fund liability under N.J.S.A. 39:6-71; 39:6-83. 2 Sutherland, Statutory Construction, supra, § 5204, pp. 211-212 (1966 Supp.) To gather the sense of a law we are directed to examine its objective and the nature of its subject matter. Giles v. Gassert, 23 N.J. 22, 34 (1956); State v. Brown, supra; Gilbert v. Unsatisfied Claim, etc. Bd., 85 N.J. Super. 143, 147 (App. Div. 1964), certification denied 44 N.J. 403 (1965).
Our courts have frequently stated that the underlying purpose of the Fund is not to make every claimant whole but to provide some basic measure of relief from claimants' absorption of the entire economic loss occasioned by the accident. Holmberg v. Aten, 68 N.J. Super. 73, 79 (App. Div. 1961); Wormack v. Howard, 33 N.J. 139 (1960); Corrigan v. Gassert, 27 N.J. 227 (1958); Dixon v. Gassert, 26 N.J. 1, 8 (1958). In Holmberg the court, stating that "the Fund is not a substitutionary welfare agency" and construing the sections in issue here, recognized the legislative intent to provide for the allowance of comprehensive deductions. See also Dixon v. Gassert, supra; Minardi v. DuPont, 49 N.J. Super. 139 (App. Div. 1958); Fasana v. Gassert, 49 N.J. Super. 52 (Law Div. 1958).
The Fund's liability is clearly limited by the legislative mandate commanding reductions of any amounts which plaintiff has received by way of payment or settlement. Since Fund liability does not arise until the court order required by N.J.S.A. 39:6-71 is entered, these required deductions must be applied notwithstanding the fact that the judgment debtor has fortuitously benefited by plaintiff's settlement with a codefendant subsequently determined to be a joint tortfeasor.
It is not for the courts to pass upon the reasonableness of legislative directives. Here, the meaning is plain  a deduction of the $5,000 settlement amount, independent of Cox's pro rata contribution credit, must be given to the Fund which stands as a unique creature of the Legislature. The Fund's liability is predicated upon the judgment debt to be *493 borne by Cox less any amount received by the Dodds in settlement with Copeland.
The boundaries of judicial activism when construing statutes such as these were clearly surveyed by the concurring opinion of Justice Francis in Canada Dry Ginger Ale, Inc. v. F. & A. Distrib. Co., 28 N.J. 444 (1958):
"When language employed by the Legislature is clear and unambiguous, the interpretive function of the judicial branch of the government is simple and confined. The law should be applied as written. Under our tripartite system of government, we cannot concern ourselves with matters of legislative wisdom or policy. If the constitutional power exists to promulgate the particular fiat, it must be accepted even if personally we believe it to be a legislative mistake. Nor can the judiciary under the guise of interpretation read into an enactment a more limited policy than that which is clearly projected into action by the words of the lawmakers." (at p. 458)
I find the language of the statutes involved to be clear and unambiguous and, accordingly, I would direct payment by the Fund of $1,211.87.