52 N.J. Super. 309 (1958)
145 A.2d 353
JOHN C. GRAY, PLAINTIFF,
v.
WILLIAM TICE AND RAYMOND T. DYGERT, DEFENDANTS, AND MARVIN STILL, ADMINISTRATOR AD PROSEQUENDUM OF MARLENE J. STILL, PLAINTIFFS,
v.
RAYMOND DYGERT AND WILLIAM TICE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 17, 1958.
Mr. Vincent T. Dee, attorney for plaintiff John C. Gray.
Mr. Herbert J. Kenarik, attorney for plaintiff Marvin Still, administrator ad prosequendum of Marlene J. Still.
Mr. Thomas J. Holleran, attorney for defendant Raymond Dygert.
Mr. Joseph P. Dallanegra, attorney for the Unsatisfied Claim and Judgment and Fund Board of New Jersey.
MASUCCI, J.C.C. (temporarily assigned).
Each of the plaintiffs in the above cases applies for an order directing payment of his respective judgment from the Unsatisfied Claim and Judgment Fund pursuant to N.J.S.A. 39:6-71, claiming to have complied with all the necessary provisions of the Unsatisfied Claim and Judgment Fund Law.
The applications are resisted on the grounds that:
1. Plaintiffs have failed to pursue their claim against a codefendant to judgment.
2. The Fund is entitled to credit against plaintiffs' respective judgment of $3,750 and $2,400 for the amounts received by said plaintiffs from the said codefendant Tice.
The facts are not in dispute.
*312 Each plaintiff instituted his respective suit against the defendant Raymond Dygert and codefendant Tice for injuries and damages arising out of an automobile accident charging each defendant with negligence contributing to the accident as the natural and proximate cause and with the resulting injuries and death of Marlene J. Still.
The suits were prosecuted to trial. During the course of the trial, following negotiations and discussions of settlement between all parties, the claims against the defendant Tice were settled, the suits dismissed as against him, and covenants not to sue executed and delivered to him. The suits then proceeded against the defendant Dygert, resulting in a judgment in favor of the plaintiff Still in the sum of $3,750 and in favor of the plaintiff Gray in the sum of $2,400. As a result of the settlement with Tice the plaintiff Still received the sum of $3,700 and the plaintiff Gray the sum of $2,600. In submitting the cases to the jury as against the defendant Dygert the court, among other things, advised the jury of the settlement of the plaintiffs' claims with the defendant Tice and of the amount of each settlement and specifically instructed them that in considering the issue of damages, they should first assess the entire damages to which they believed each of the plaintiffs was entitled and from this amount deduct the amount each plaintiff was receiving as a result of the settlement with Tice, and render a verdict for the net difference, if any. The jury came in with the verdicts for the plaintiffs mentioned above.
The first point raised by the Fund, that the plaintiffs must pursue their respective claims to judgment before they are entitled to recover against it, requires a construction of N.J.S.A. 39:6-71, which provides that the applicant:
"* * * has fully pursued and exhausted all remedies available to him for recovering damages against all persons * * * by
(1) Commencing actions against all such persons against whom the applicant might reasonably be considered as having a cause of action in respect of such damages and prosecuting every such action in good faith to judgment and
(2) Taking all reasonable steps available to him to collect on every judgment so obtained and by applying the proceeds of any *313 judgment or recovery so obtained towards satisfaction of the amount due upon the judgment for payment of which the claim is made."
Although the Fund does not deny compliance in good faith with all the requirements of the above provisions, it insists that failure to prosecute these actions to judgment bars recovery from the Fund.
Counsel for the Fund is contending for a strict and literal construction of the requirement of the statutory provision to "prosecute every such action in good faith to judgment."
It is suggested that even a literal construction of this provision would not prevent recovery. Technically, the suits were prosecuted to a judgment of dismissal in good faith. Nothing therein requires that they must be prosecuted to judgments for the plaintiffs or that the results must follow a contest to the end. All that is required is prosecution in good faith, and that such actions were so prosecuted is neither denied nor could it be denied.
However, in Giles v. Gassert, 23 N.J. 22, 33-34 (1956), Heher, J., referring to the act in question, stated:
"The sense of a law is to be collected from its object and the nature of the subject matter, the contextual setting, and the statutes in pari materia and the import of a particular word or phrase is controlled accordingly. Isolated terms cannot be invoked to defeat a `reasonable construction.' Wright v. Vogt, 7 N.J. 1 (1951). See also State v. Brown, 22 N.J. 405 (1956). The statute is to be liberally construed to advance the remedy, due regard being had to the protection of the Fund against fraud and abuse and to the fulfillment of the essential legislative policy. The literal sense of terms is not to have ascendancy over the reason and spirit of the expression as a whole."
The object, nature and purpose of the act is to provide compensation for those unfortunate enough to be involved in an automobile accident with an irresponsible person.
The plaintiffs come within that classification and within the very scope and purpose of the act. They complied with all its provisions except the entry of an affirmative judgment in their favor. In compliance with its provisions they pursued and exhausted all remedies available to them for recovery of damages against all persons who might reasonably *314 be liable for their injuries. The actions were prosecuted in good faith. An appropriate and advisable settlement was made which diminished and restricted the liability of the Fund to the extent of the settlements, saving the Fund in one case $3,750 and the other, the sum of $2,600.
This act should be construed to advance and carry out its beneficial purposes. The import of a single word or phrase should not be controlling to defeat the very scope and object of the act, when a liberal construction thereof will avoid such result and support its reason and spirit as a whole.
It is true that due regard must be had to protect the Fund against fraud or abuse and to the fulfillment of the essential purpose and policy of the Legislature.
In carrying out the legislative policy the court must not carry its literal construction to the point of preventing the Fund from obtaining money or credit by an advisable settlement of an action against a third person, when such an action is instituted and prosecuted and settlement made in good faith. In some cases this money or credit might not have been obtained if the action had been arbitrarily or necessarily, because of a literal construction of the Unsatisfied Judgment Fund Law, prosecuted to judgment.
A liberal construction of the pertinent provisions requires emphasis and purport to be given to the words providing that the action and prosecution thereof be in food faith. The concluding words, "to judgment," have reference to its prosecution to judgment as a necessary procedural step, if the case is not settled or, if settled, to a judgment of dismissal. Any other construction would discourage settlement, a desirable objective. In many instances the Fund might be deprived of money or credit in the amount of the settlement which is to be applied to the satisfaction of the amount due. In the instant case by virtue of the settlements, the Fund has been credited with the sum of $3,750 which it might have failed to recover if the cases against the codefendant Tice had gone to trial and been lost.
Counsel for the Fund argues that such interpretation would open the door to fraud and even permit a double recovery *315 or, at least, collection of more money than a plaintiff would be permitted if judgment were recovered merely against the uninsured.
Of course, all human effort is subject to fraud. In order to meet such a contingency the act itself provides that the action shall be prosecuted in good faith. If the settlement results from fraud or other improper action, it would not be in good faith and not in compliance with this provision.
For the purpose of carrying out the objective of the law and not discouraging settlements of suits, which might otherwise be lost to the detriment of the Fund, a reasonable construction of the act insofar as the necessity of instituting and prosecuting suit for damages, would require the suit to be prosecuted in good faith, either to complete trial and judgment or to a settlement and judgment. It should not matter whether the judgment be voluntary or an involuntary judgment of dismissal, an affirmative judgment for the claimant or other final disposition of the case.
The intent and purpose of the act is indicated in the phrase that an action shall be in good faith.
The second contention of the Fund is sound. The Legislative design and purpose of the act is that an injured or damaged party coming within the provisions of the act be given relief to the extent of $5,000 if he cannot obtain relief to that extent from any other proper source. It did not undertake to make the applicant whole. Dixon v. Gassert, 26 N.J. 1 (1958).
The last paragraph of N.J.S.A. 39:6-71 expressly provides that "any amount for compensation * * * for damages or other benefits which the plaintiff has received * * * from any person other than the judgment debtor shall be deducted from the amount due upon the judgment for payment of which claim is made."
The Fund is entitled to be credited with the sums received by the claimants from their respective settlements.