STEELE v. WILSON

1. Automobiles—Motor Vehicle Accident Claims Act—Insured Tortfeasor—Settlement—Statutes.

Settlement in automobile accident case with the insured joint tortfeasor of an uninsured motorist is an acceptable method of satisfying the statutory requirement that a plaintiff bring an action "against all persons against whom the plaintiff might reasonably be considered as having a cause of action" (MCLA § 257.1107[3]).

2. Automobiles—Motor Vehicle Accident Claims Act—Uninsured Motorist Fund—Purpose—Statutes.

An uninsured motorist fund exists to protect injured persons from loss resulting from inability to recover damages caused by uninsured motor vehicles; to bar an injured party from recovering from the uninsured motorists fund for injuries from an uninsured tortfeasor because recovery is available from an insured joint tortfeasor defeats the fund's purpose (MCLA § 257.1107).

3. Action—Settlement—Policy.

Public and judicial policies favor settlement of lawsuits.

4. Automobiles—Motor Vehicle Accident Claims Act—Insured Tortfeasor—Settlement—Consent—Statutes.

A plaintiff injured in an automobile accident does not have to have the Motor Vehicle Accident Claims Fund's consent before he can settle with an insured tortfeasor where there is also an uninsured joint tortfeasor; statutory provision requiring the fund's consent to settlement applies only to settlement with the uninsured motorist (MCLA § 257.1108[4]).

---

References for Points in Headnotes

[1, 2, 4–8] 7 Am Jur 2d, Automobile Insurance § 135 et seq.
[3] 15 Am Jur 2d, Compromise and Settlement § 4.

5. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS ACT—INSURED TORTFEASOR—DISMISSAL—STATUTES.

A plaintiff complies with the statutory provision governing recovery from uninsured motorists that he bring an action against all persons against whom he reasonably can be considered as having a cause of action by settling with an insured joint tortfeasor of the uninsured motorist before bringing his suit against the uninsured motorist fund, because at the time of the complaint against the fund, the plaintiff no longer had a claim against the insured tortfeasor or by bringing suit against the insured tortfeasor and then dismissing the suit (MCLA § 257.1107[3]).

6. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS ACT—UNINSURED MOTORIST FUND—AMOUNT PAYABLE—INSURED TORTFEASOR—STATUTES.

The amount paid or payable by an insurer of a tortfeasor in an automobile accident for the purpose of deducting that amount from the amount payable by the uninsured motorist fund is either the amount the insurer is obligated to pay under a judgment or the amount the insured consents to pay by settlement (MCLA § 257.1122[2]).

7. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS ACT—UNINSURED MOTORIST FUND—AMOUNT PAYABLE—INSURED TORTFEASOR—SETTLEMENT—STATUTES.

The amount payable by the uninsured motorist fund for plaintiff's injuries sustained in an automobile accident with an uninsured motorist and insured motorists was reduced only by the amount for which the plaintiff had settled his claims with the insured motorists because since there was a settlement, the extent of the insured motorists' liability, if any, had never been determined; an insured motorist by settling a claim against him does not admit liability, let alone liability to the full extent of his insurance coverage (MCLA § 257.1122[2]).

8. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS ACT—UNINSURED MOTORIST—INSURED TORTFEASOR—SETTLEMENT—STATUTES.

The plaintiffs in an automobile collision with an uninsured motorist and insured motorists have a right to proceed against the uninsured motorist for damages and thereafter against the Secretary of State and the uninsured motorists fund in an attempt to determine if the uninsured motorist and, therefore, the fund is liable even though the insured motorists have already settled with the plaintiffs (MCLA § 257.1123[2]).

Appeal from Wayne, Nathan J. Kaufman and Lila M. Neuenfelt, JJ. Submitted Division 1 February 3, 1970, at Detroit. (Docket No. 6686.) Decided January 18, 1971. Leave to appeal denied April 15, 1971. 384 Mich 828.

Complaint by Donald Steele and Audrey Townes against Clarence J. Wilson for personal injuries received in an automobile accident. The Secretary of State as Director of the Motor Vehicle Accident Claims Fund appeared on behalf of defendant. Secretary's motion to dismiss granted. Plaintiffs appeal. Reversed and remanded.

*Dietrich & Shrauger,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Joseph B. Bilitzke,* Assistant Attorney General, and *Alan Walt,* Special Assistant Attorney General, for the Secretary of State.

Before: LEVIN, P. J., and J. H. GILLIS and BRONSON, JJ.

BRONSON, J. The sole issue raised by plaintiffs on appeal is as follows:

Where plaintiffs have negotiated settlements with some of the tortfeasors involved in an automobile accident and have subsequently commenced suit against the sole remaining uninsured tortfeasor, are plaintiffs barred by the provisions of § 7(3) of the Motor Vehicle Accident Claims Act from proceeding against the Motor Vehicle Accident Claims Fund[1] for payment of any judgment against the uninsured tortfeasor?

---

[1] PA 1965, No 198, MCLA § 257.1107 (Stat Ann 1968 Rev § 9.2807).

The facts in this case are undisputed. On September 26, 1967, plaintiffs were passengers in a Checker Cab, owned by Paul Camellri and operated by Arthur J. Beaudry, moving in an easterly direction on Wreford Avenue in the City of Detroit. At the intersection of Grand River and Wreford, the cab was in a collision with a vehicle owned and operated by defendant Clarence Wilson. Wilson's vehicle was uninsured within the meaning of the Motor Vehicle Accident Claims Act (MCLA § 257-.1101, *et seq.*, as amended by PA 1967, No 274 [Stat Ann 1968 Rev § 9.2801, *et seq.*]).

Following the collision, plaintiffs each made claim against, negotiated a settlement with, and received payment from Checker Cab, Paul Camellri or Arthur J. Beaudry.

Plaintiffs then commenced this action against defendant Wilson, seeking recovery from the Motor Vehicle Accident Claims Fund for personal injuries allegedly received in the same accident in which they had previously filed claim and obtained a money settlement. Neither Checker Cab, Paul Camellri, nor Arthur J. Beaudry was ever made a party to this action or to any legal proceedings commenced by plaintiffs.

The trial court granted the Secretary of State's motion to dismiss. Pursuant to GCR 1963, 806.1, plaintiffs assign error.

The statutory provision that gave rise to this appeal is MCLA § 257.1107(3) (Stat Ann 1968 Rev § 9.2807[3]):

"The secretary shall not pay out of the fund any amount in respect of a judgment unless the judgment was given in an action brought against all persons against whom the applicant might reasonably be considered as having a cause of action in

respect of the damages in question and prosecuted against every such person to judgment or dismissal."

It is plaintiff's contention that the Motor Vehicle Accident Claims Act allows an injured party to negotiate an amicable settlement with a party or parties in the accident and still recover for the uninsured motorist's wrong through the fund.

Defendant denies plaintiffs' position and insists that the strict construction of the entire statute requires that no payment be made under the facts of this case. Both parties to this litigation agree that the Motor Vehicle Accident Claims Act is remedial in nature. The parties disagree, however, as to how a remedial statute should be construed.

Plaintiffs contend that remedial legislation must be liberally construed to provide for the remedy intended. *In re Bennett* (CA6, 1964), 338 F2d 479.

Defendant answers that the entire concept of establishing a fund for the payment of judgments obtained against uninsured motorists is new and did not exist at common law in Michigan. The provisions of the act, which itself is remedial, are in derogation of the common law and must therefore be strictly construed. *In re Appeal of Black* (1890), 83 Mich 513; *Holland* v. *Eaton* (1964), 373 Mich 34; *Swift* v. *Dodson* (1967), 6 Mich App 480.

Plaintiffs cite as authority for their position the case of *Gray* v. *Tice* (1958), 52 NJ Super 309 (145 A2d 353), which holds that the making of a *bona fide* settlement with a joint tortfeasor does not bar a claim against the fund under a similar provision requiring that claims be prosecuted to judgment. (See 7 ALR3d 867, § 8, p 867.)

Defendant contends that *Gray* is inapplicable because the New Jersey law is an unsatisfied judgment act, where the Michigan law is not. Defendant bases this assertion on § 22(2) of the act, being

MCLA § 257.1122(2) (Stat Ann 1968 Rev § 9.2822 [2]):

"No payment shall be made out of the fund in respect to a claim or judgment for damages or in respect to a judgment against the secretary, of any amount paid or payable by an insurer by reason of the existence of a policy of insurance or of any amount paid or payable by any other person by reason of the existence of any policy, contract, agreement or arrangement, providing for the payment of compensation, indemnity or other benefits."

Defendant argues that this section really means that to the extent that there may be available to plaintiffs recovery from an insured tortfeasor, such recovery must be sought and obtained to the exclusion of any payment from the fund. However, this is *not* to say, nor can it reasonably be read to say, that the insured's policy must be, as defendant claims, entirely exhausted before any of the fund can be paid out. But even if the statute were read the way defendant claims, it *would be* an unsatisfied judgment act by its very nature.

Defendant further argues that *Gray* is inapplicable because the New Jersey act provides that amounts to be paid out of the fund shall be credited with sums received by the claimants from their respective settlements. We think that fundamentally the same result is achieved under § 23(2) (MCLA § 257.1123[2] [Stat Ann 1968 Rev § 9.2823 (2)]) of our statute:

"Where any amount is recovered from any other source in partial discharge of the claim or judgment, or where a claim or judgment for damages is reduced by an amount paid or payable by an insurer or any other person, as provided in section 22(2) or (3) of this act, then the limitations set forth in subsection 1 of this section shall be appli-

cable to the excess of the claim or judgment over the amount by which the claim or judgment is partially satisfied or is reduced under section 22(2) or (3). Any amount paid out of the fund in excess of the amount authorized by this section may be recovered by action brought by the secretary."

It is the opinion of this Court that *Gray* should be followed in that the material statutory provision of the New Jersey and Michigan acts are similar in intent and therefore settlement with the insured joint tortfeasor would be an acceptable method of satisfying the requirement of § 7(3) (MCLA § 257-.1107[3] [Stat Ann 1968 Rev § 9.2807(3)]) that a plaintiff bring an action "against all persons against whom the applicant [plaintiff] might reasonably be considered as having a cause of action * * * ".

The defendant and the trial court took the position that unless all the tortfeasors are brought into one cause of action, the Secretary of State would have no way of knowing who third-party tortfeasors were or the extent of their collectibility.

This position is unrealistic. In cases such as the one at bar, where there is an obvious possibility of an additional party tortfeasor, the Secretary of State, by perusal of the application, would be placed on notice that there may be such a third party. The secretary would be able to determine who possible third parties were and the extent of their collectibility.

We are faced here with a problem that presents no simple solution. Much as in the case of circular priorities, every argument propounded has both a strong point and weaknesses. No solution is totally adequate nor totally satisfactory.

The concept of an uninsured motorist's fund is to protect injured persons from loss resulting from inability to recover damages caused by uninsured

motor vehicles. To accept the state's position would tend, in some degree, to thwart the very reason for the creation of such a fund.

Public and judicial policies favor settlement. By and large, settlement represents a tactical evaluation of the situation by both parties. Settlement benefits a plaintiff in that he is assured of some recompense, and that recompense will be effectuated in all probability without protracted delays often unavoidably associated with the litigatory process. For defendant, settlement represents a means of avoiding an adverse verdict and the possibility of a much higher award being returned. In other words, settlement represents the market value to both parties of not going through the litigatory process. For both parties, settlement eliminates the doubt and the possible harshness concomitant with an unfavorable verdict.

The Attorney General contends that the accident claims fund should be the sole arbiter of whether or not settlement should be allowed.[2] If we were to adopt his contention it would preempt both the plaintiffs' and the court's right to see to it that litigation is terminated amicably, speedily, and with minimum use of the expensive litigatory machinery.[3]

---

[2] We have considered the possible applicability of MCLA § 257.1108 (4) (Stat Ann 1970 Cum Supp § 9.2808[4]), which provides that "any settlement made between the plaintiff and defendant shall not be binding upon the secretary or the fund unless the secretary consents thereto". It is clear from the earlier language of the section that the "defendant" referred to is the owner or operator of the uninsured motor vehicle, not a third-party tortfeasor.

[3] Although it is possible to envisage a situation in which possibly collusive action is taken in concert by plaintiff with an insured defendant, by and large we feel that the overwhelming majority of plaintiffs in such actions will pursue settlements only to their benefit and not merely to attack the fund.

Contrariwise, if the uninsured motorists' fund has a veto on any settlement, it can, in effect, insist on a disproportionate share being paid by other litigants as a condition to allowing any settlement.

The fund may have a right of contribution against joint tortfeasors who pay an inadequate amount in settlement. The fund is entitled

From the point of view of the injured plaintiff, saying to him that he cannot settle with third-party tortfeasors without the fund's consent unless he is willing to release the fund deprives him of a right that a plaintiff would normally have in respect to third parties, *i.e.*, the right to settle with them rather than hazard litigation. If we were to adopt the fund's contention, it would mean that plaintiffs injured by uninsured motorists will have to decide whether to hazard the uncertainties of litigation or accept whatever settlement can be worked out with the third-party tortfeasors and possibly, if the fund is willing to consent at all, an inadequate contribution from the fund.

When the present complaint was commenced, plaintiffs did not have a cause "of action in respect of the damages in question" (MCLA § 257.1107[3] [Stat Ann 1968 Rev § 9.2807(3)]) against the defendants with whom they had already settled. Thus, literally, they did not have a duty to join them in the suit at that time. Of course, if plaintiffs have a right under the accident claims act to settle before suit, then logically they should have a right to settle after suit; testing the reasoning of the first sentence in this manner, it appears that again, literally, the plaintiffs are not precluded by the relevant language from dismissing the suit. The statute only requires that the plaintiff sue all those against whom it has a cause of action and that it prosecute the suit to judgment "or dismissal". (MCLA § 257.1107[3] [Stat Ann 1968 Rev § 9.2807(3)].) Thus, again literally, even if plaintiffs had sued the other de-

to whatever rights of contribution the uninsured motorist has and it appears that contribution is to be allowed among joint tortfeasors without regard to whether those demanding contribution or against whom it is sought have settled or paid a judgment. See 18 Am Jur 2d, Contribution, § 52, p 75; *Moyses* v. *Spartan Asphalt Paving Company* (1970), 383 Mich 314, 334.

fendants, they could have dismissed as to them unless we read "dismissal" as referring only to an involuntary dismissal and as precluding a voluntary dismissal or dismissal at the instance of the plaintiffs.

As to § 22(2), all that it requires is that any amount "paid or payable" by an insurer or by any other person by reason of the existence of insurance be deducted from the amount payable from the uninsured motorists fund. After the settlements were arranged the only amounts "payable" by the insurers were the settlement amounts. In a sense the amount "paid or payable" by an insurer by reason of the existence of a policy of insurance is either the amount it is obliged to pay under a judgment or the amount which it consents to pay by settlement.

An alleged tortfeasor does not necessarily admit liability by agreeing to settle. Rather, in most cases, he is weighing the possibility of his being found not liable against the costs and the time consumed in litigation of the issue.

Accordingly, in this case the possible third-party defendants who settled with the plaintiffs never reached the issue of their alleged liability. Thus, it never really was ascertained whether or not those defendants would be found liable for any amount at all, let alone to the full extent of their insurance coverage. The only standard of "paid or payable" for those who settled is that amount in which settlement was agreed upon.

The Attorney General argues as if the liability of insured tortfeasors is in every case a certainty. Many cases will arise where the liability of an insured joint tortfeasor is questionable; a settlement in such cases may effectuate a reduction in the fund's liability for the uninsured joint tortfeasor.

We hold that plaintiffs have a right to proceed against the uninsured motorist and thereafter against the Secretary of State and the uninsured motorists fund in an attempt to determine if that party and therefore the fund is liable. We further hold that, as there has been a partial settlement, the trial judge should instruct the jury that any amount paid in settlement to plaintiffs should be deducted from plaintiffs' damages as ascertained by the jury in reaching their verdict. *Cf. Larabell* v. *Schuknecht* (1944), 308 Mich 419, 423; see also MCLA § 257.1123 (2) (Stat Ann 1968 Rev § 9.2823[2]).

Reversed and remanded. No costs, a public question being involved.

All concurred.