BRUNNER v SECRETARY OF STATE

1. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS ACT—LIABILITY—
   UNINSURED MOTORIST COVERAGE.

   The Motor Vehicle Accident Claims Act is designed to make the
   Motor Vehicle Accident Claims Fund secondarily liable where
   other insurance is available to an injured plaintiff via the
   uninsured motorist provision in his own insurance policy; the
   act mandates that the fund be resorted to only after such other
   coverage is exhausted (MCLA 257.1101 *et seq.).*

2. AUTOMOBILES—UNINSURED MOTORIST COVERAGE—VOLUNTARY SET-
   TLEMENT—MOTOR VEHICLE ACCIDENT CLAIMS ACT.

   A voluntary settlement between an insured plaintiff and his
   insurer, negotiated pursuant to the uninsured motorist provi-
   sion of plaintiff's policy, without representation of the Secre-
   tary of State and not subject to his approval, which is for an
   amount less than plaintiff's damages and is less than the
   maximum liability limit of the policy, cannot be utilized to
   calculate the Motor Vehicle Accident Claims Fund's liability
   under a subsequent judgment obtained by plaintiff against the
   uninsured motorist; rather the maximum policy limit of plain-
   tiff's uninsured motorist provision should be deducted from the
   amount of plaintiff's judgment against the uninsured motorist
   (MCLA 257.1122, 257.1123).

Original action in the Court of Appeals. Submit-
ted Division 2 April 11, 1973, at Lansing. (Docket
No. 14746.) Decided July 25, 1973.

Complaint by William Brunner against Richard
H. Austin, Secretary of State, as Director of the
Motor Vehicle Accident Claims Fund, for a writ of

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 7 Am Jur 2d, Automobile Insurance §§ 135–138.
   7 Am Jur 2d, Automobiles and Highway Traffic §§ 301, 302.

mandamus to compel the defendant to pay monies out of the fund. Writ denied.

*van Benschoten & van Benschoten, P. C.,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Joseph B. Bilitzke* and *Carl K. Carlsen,* Assistants Attorney General, for defendant.

Before: FITZGERALD, P. J., and J. H. GILLIS and ADAMS,* JJ.

ADAMS, J. Plaintiff suffered personal injuries in an automobile accident with an uninsured motorist. He filed a claim against his insurer under the uninsured motorist provision in his policy, which provided a maximum coverage of $10,000 for any one injury. Plaintiff and his insurer settled for $8500. Plaintiff then filed an action against the uninsured motorist, was awarded a judgment of $19,000, and subsequently sought to recover $10,-000 of this judgment from the Motor Vehicle Accident Claims Fund.

The fund offered $9000, contending that the $10,000 maximum liability limit of plaintiff's policy rather than the $8500 settlement should be deducted from the $19,000 judgment to determine the amount plaintiff could recover from the fund. Plaintiff filed a complaint in this Court for writ of mandamus and defendant was ordered to show cause why such a writ should not issue compelling him to pay $10,000, plus interest and costs, out of the Motor Vehicle Accident Claims Fund.[1]

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] The pertinent sections of the Motor Vehicle Accident Claims Act

1965 PA 388, as amended; MCLA 500.3010; MSA
24.13010 requires that automobile liability policies

(1965 PA 198, as amended) in effect at the time of the accident are
§§ 22 and 23 (MCLA 257.1122 and 257.1123; MSA 9.2822 and 9.2823),
which read as follows:

"Sec. 22. (1) No payment shall be made out of the fund for payment
of damages arising out of motor vehicle accidents occurring in this
state prior to January 1, 1966.

"(2) No payment shall be made out of the fund in respect to a claim
or judgment for damages or in respect to a judgment against the
secretary, of any amount paid or payable by an insurer by reason of
the existence of a policy of insurance or of any amount paid or
payable by any other person by reason of the existence of any policy,
contract, agreement or arrangement, providing for the payment of
compensation, indemnity or other benefits.

"(3) No amount sought to be paid out of the fund shall be sought in
lieu of making a claim or receiving a payment that is payable by
reason of the existence of a policy of insurance, or in lieu of making a
claim or receiving a payment that is payable by reason of the
existence of any policy, contract, agreement or arrangement, provid-
ing for the payment of compensation, indemnity or other benefits, to
which the claimant would be entitled in the absence of this act.

"(4) In determining the amount which is payable from the fund
under subsections (2) and (3) of this section and section 23, of this act,
no consideration shall be given to any amount received or receivable
by or paid or payable to or for the benefit of any person, under a
policy of life insurance or under any policy, contract or agreement,
providing for the payment of any hospital or medical expenses.

"(5) No amount sought to be paid out of the fund shall be sought,
directly or indirectly, for payment to or on behalf of any insurer or
other person to reimburse or indemnify the insurer or such other
person for any amount paid or payable by the insurer or such other
person, by reason of the existence of any policy of insurance or any
contract, agreement or arrangement, providing for the payment of
any compensation, indemnity or other benefits.

"Sec. 23. (1) In respect to applications under this act for payment of
damages arising out of motor vehicle accidents occurring in this state
on or after January 1, 1966, the secretary shall not pay out of the
fund, (a) more than $10,000.00, exclusive of costs, on account of injury
to or the death of one person, and, subject to such limit for any one
person so injured or killed, not more than $20,000.00, exclusive of
costs, on account of injury to or the death of 2 or more persons in any
one accident; and (b) more than $5,000.00, exclusive of costs, for loss
of or damage to property resulting from any one accident.

"(2) Where any amount is recovered from any other source in
partial discharge of the claim or judgment, or where a claim or
judgment for damages is reduced by an amount paid or payable by an
insurer or any other person, as provided in section 22(2) or (3) of this
act, then the limitations set forth in subsection 1 of this section shall
be applicable to the excess of the claim or judgment over the amount
by which the claim or judgment is partially satisfied or is reduced

issued in Michigan must include uninsured motorist coverage unless such coverage is rejected in writing by the named insured. This Court in *Woods v Progressive Mutual Ins Co,* 15 Mich App 335; 166 NW2d 613 (1968), recognized that 1965 PA 388 is *in pari materia* with the Motor Vehicle Accident Claims Act, 1965 PA 198, as amended; MCLA 257.1101 *et seq.;* MSA 9.2801 *et seq.*

Judge Levin's concurring opinion in *Collins v Motorists Mut Ins Co,* 36 Mich App 424, 434–435; 194 NW2d 148, 153–154 (1971), states in part:

"We have previously held that § 3010 of the insurance code and the Motor Vehicle Accident Claims Act are *in pari materia.*

"Under § 23 of the Motor Vehicle Accident Claims Act, the fund is obliged to compensate persons injured by uninsured motorists to the extent of $10,000 on account of injury to or death of one person and $20,000 for two or more persons in any one accident, but the fund's liability is limited to situations where the damages caused by the uninsured motorist *exceed* (i) whatever amount 'is recovered from any other source in partial discharge of the claim or judgment,' and (ii) amounts 'paid or payable by an insurer'. Sections 22(2) and 22(3) of the act similarly provide that no payments shall be made out of the fund 'of any amount paid or payable by an insurer by reason of the existence of a policy of insurance'.

"Since the fund is liable only to the extent that an injured person does not recover from other sources or from an insurer under a policy of insurance, it would tend to reduce potential claims against the fund if insured drivers carry insurance protection against the risk of damage caused by uninsured motorists. Read in conjunction with the Motor Vehicle Accident Claims Act it is apparent that the legislative purpose in adding § 3010 to the insurance code (requiring insurance carriers to provide uninsured motorist protection unless

under section 22(2) or (3). Any amount paid out of the fund in excess of the amount authorized by this section may be recovered by action brought by the secretary."

such coverage is rejected by the policy holder in writing) was to reduce claims against the fund." (Emphasis by the Court.)

The Supreme Court in *Blakeslee v Farm Bureau Mut Ins Co,* 388 Mich 464, 474; 201 NW2d 786, 791 (1972), cited Judge LEVIN's concurring opinion in *Collins, supra,* with favor and said (p 475; 201 NW2d 792):

"We believe that the rule stated in *Safeco Ins Co of America v Jones,* 286 Ala 606, 614; 243 So 2d 736, 742 (1970) represents the better reasoning as well as the majority rule, which we now adopt. There the Court stated:

" 'We hold that our statute sets a minimum amount for recovery, but it does not place a limit on the total amount of recovery so long as that amount does not exceed the amount of the actual loss; that where the loss exceeds the limit of one policy, the insured may proceed under other available policies; and that *where the premiums have been paid for uninsured motorist coverage, we cannot permit an insurer to avoid its statutorily imposed liability by its insertion into the policy of a liability limiting clause which restricts the insured from receiving that coverage for which the premium has been paid.' "* (Emphasis added.)

The Supreme Court in *Boettner v State Farm Mut Ins Co,* 388 Mich 482; 201 NW2d 795 (1972), held that because of 1965 PA 388, exclusionary clauses in the insurance policy inconsistent with the statutory language must be judicially rejected. The Court then held that uninsured motorist coverages could be "stacked" or "pyramided" up to the total damages sustained by the insured.

Under the policy of insurance in the instant case, plaintiff's insurer was obligated to pay plaintiff "all sums which the insured * * * shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile

because of bodily injury", subject to a maximum limit of $10,000 for a single injury. It is important to note that the liability of plaintiff's insurance company to plaintiff under the uninsured motorist provision of the policy and the fund's liability to plaintiff under the Motor Vehicle Accident Claims Act for injuries received at the hands of an uninsured motorist are identical in terms of proof. However, even though plaintiff's right to recover from his insurance company was predicated upon the same proof of liability as that prerequisite to his right to recover from the uninsured motorist fund, plaintiff, as a result of negotiations in which the Secretary of State had no part, elected to settle his claim with his insurer for $8500, $1500 less than his insurer's maximum liability limit under the policy. Nevertheless, plaintiff now maintains that the uninsured motorist fund should pay the *full* amount authorized by statute.

Plaintiff relies upon *Green v Blicharski,* 32 Mich App 15; 188 NW2d 113 (1971) to support his claim that the Motor Vehicle Accident Claims Fund should be liable for the difference between the amount of his judgment and the amount of his settlement with his own insurer, up to the fund's statutory maximum liability of $10,000. In *Green,* one plaintiff was injured by defendant Blicharski, an uninsured motorist. Plaintiffs filed a claim under the uninsured motorist provision of their own insurance policy. This policy provided a maximum liability of $10,000 on the part of the insurer and called for binding arbitration in the absence of agreement between the insured and the company. Following a contested arbitration hearing, the arbitrator awarded plaintiffs $7250 in full satisfaction of the insurer's obligation under its policy. Plaintiffs then sued defendant, obtained a judgment of $16,000 plus interest and costs, and sought

to obtain from the fund the difference between the amount of the judgment and the amount of the arbitration award. The Secretary of State contended that the correct formula for determining fund liability was to subtract plaintiffs' policy limit ($10,000) under their uninsured motorist coverage from the amount of the judgment.

In resolving the dispute this Court stated (pp 19–20):

"It is immediately apparent that we are called upon to determine the difference between the meaning of the terms 'paid' and 'payable' as used in the statute [MCLA 257.1122; MSA 9.2822], as those terms affect the case at bar.

"There is none. The amount 'payable' is the amount 'paid'. This, of course, is by reason of the arbitration clause in the policy. *After the arbitration award was made according to the terms of the policy, there was nothing more 'payable'.*

* * *

"Following the valid, binding and final award of the arbitrator, plaintiffs had no further recourse against the insurance company. Plaintiffs have not limited their recovery against the insurance company in order to claim against the Motor Vehicle Accident Claims Fund. *They have,* with full diligence and vigor, *recovered from Allstate all that is payable to them under the policy."* (Emphasis added.)

This Court in *Green* ruled only upon the effect of an *arbitration award* pursuant to terms of the insurance policy, and did not consider a *voluntary settlement* such as that existing in the instant case. Although there is no indication in the case at bar of fraud or collusion between plaintiff and his insurer, extension of the *Green* holding to the present facts would place the fund at the mercy of future private settlements which are negotiated in

the absence of the Secretary of State, over which he has no power of approval, and which—unlike *Green*—are not concluded by an independent, impartial arbitrator whose presence would preclude any inference of impropriety.

In *Steele v Wilson,* 29 Mich App 388; 185 NW2d 417 (1971), plaintiffs negotiated settlements with several potential third-party defendants and subsequently sued the uninsured driver of the vehicle which struck the cab in which plaintiffs had been riding. Representatives of the fund contested liability, claiming that plaintiffs, by virtue of their private settlements with the other potential defendants, had failed to satisfy the MCLA 257.1107(3); MSA 9.2807(3) requirement that they bring an action "against all persons against whom the applicant [plaintiffs] might reasonably be considered as having a cause of action". Although the *Steele* Court rejected this contention and held for plaintiffs, we believe that *Steele* is distinguishable from the present case.

It is important to distinguish the decided difference in the proof required to establish liability on the part of *insured third-party tortfeasors* (as in *Steele)* from the proof required to show liability of an *uninsured tortfeasor* and so permit recovery under the uninsured motorist provision of plaintiff's own insurance policy and the Motor Vehicle Accident Claims Act (as in the case at bar). The *Steele* Court noted (p 397):

"Many cases will arise where the liability of an insured joint tortfeasor is questionable; a settlement in such cases may effectuate a reduction in the fund's liability for the uninsured joint tortfeasor."

The liability of the insured joint tortfeasor arises out of the tortious action attributable to him. Such

action may, of course, be entirely separate and distinct from the conduct of the uninsured motorist and may be less likely to constitute a tort than is the act of the uninsured. Under such circumstances, the liability of the joint tortfeasor may appear "questionable".

While distinguishing *Steele* from the case at bar, we recognize the strong public policy argument in favor of settlements. However, we are likewise mindful of the contravening policy argument with respect to the fund, namely that the Motor Vehicle Accident Claims Act. is designed to make the fund secondarily liable where other insurance is available to an injured plaintiff via the uninsured motorist provision in his own insurance policy.[2] *Cf. Blakeslee v Farm Bureau Mut Ins Co, supra; Collins v Motorists Mut Ins Co* (concurring opinion by Judge LEVIN), *supra.* We conclude that the act mandates that the fund be resorted to only after such other coverage is exhausted. Consequently, a voluntary settlement between an insured plaintiff and his insurer, negotiated pursuant to the uninsured motorist provision of plaintiff's policy without representation by the Secretary of State and not subject to his approval, which is for an amount less than plaintiff's damages and is less than the maximum liability limit of the policy, cannot be utilized to calculate the fund's liability under a subsequent judgment obtained by plaintiff against the uninsured motorist.

In this case the maximum policy limit of plaintiff's uninsured motorist provision ($10,000 for one injury) should be deducted from the amount of plaintiff's judgment against the uninsured motorist

[2] MCLA 257.1122(2); MSA 9.2822(2) provides:

"No payment shall be made out of the fund in respect to a claim * * * for damages * * * of any amount paid or payable by an insurer by reason of the existence of a policy of insurance * * * ."

($19,000), resulting in a liability by the fund to plaintiff of $9,000 plus interest on this amount and costs assessed.

The writ is denied. No costs, a public question being involved.

All concurred.