WATTS v DEPARTMENT OF STATE

Docket No. 55401. Argued November 8, 1974 (Calendar No. 17).—
Decided June 24, 1975.

Boisey Watts and Mary Watts sustained personal injuries in an
automobile accident with an uninsured motorist. The Watts'
insurance company paid a settlement of $5,000 to Boisey Watts
and $7,500 to Mary Watts under the uninsured motorist cover-
age of their policy, which provided a limit of $10,000 for each
person. Subsequently, the Watts obtained a judgment against
the uninsured motorist and the Motor Vehicle Accident Claims
Fund paid them the excess of the amounts of the judgment
over the $10,000 policy limits. The Court of Claims, Mark S.
Andrews, J., held that Boisey Watts was entitled to an addi-
tional payment from the fund of $5,000 and Mary Watts was
entitled to an additional payment of $2,500 from the fund. The
Court of Appeals, McGregor, P. J., and Bronson and Carland,
JJ., reversed and held that the fund was liable only for the
excess of the judgment over the policy limits (Docket No.
16097). Plaintiffs appeal. *Held:*

1. Where a good-faith settlement is negotiated, whether with
the tortfeasor or the injured person's own insurer, the Motor
Vehicle Accident Claims Act (MCLA 257.1122; MSA 9.2822)
does not require that policy limits be fully collected or credited
to the uninsured motorist fund.

2. Before seeking to collect from the uninsured motorist fund,
the policyholder must exert reasonable, good-faith efforts to
recover from his insurer the amount "payable" by reason of the
existence of a policy of insurance and the fund is entitled to
credit for the amount actually paid by the insurer. When the
amount *actually payable by reason of the existence of a policy
of insurance* is determined, whether by adjudication, arbitra-

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arbitration and Award § 36.

15 Am Jur 2d, Compromise and Settlement § 4.

[2–8] 7 Am Jur 2d, Automobile Insurance §§ 136, 137.

Rights and liabilities under "uninsured motorists" coverage. 79
ALR2d 1252.

tion, or good-faith settlement, nothing more is "payable" under the policy.

3. The Motor Vehicle Accident Claims Fund's remedy for fraud or abuse is to attack those settlements which appear improper by affirmatively showing collusion or some other species of fraud.

M. S. Coleman, J., dissented on the ground that the solution is fundamentally unfair to the Motor Vehicle Accident Claims Fund and raises constitutional questions because it allows the other two parties to agree to any kind of settlement less than the policy limits and bind the fund to pay the difference, a result the statute seeks to preclude.

Reversed and remanded for entry of judgment affirming the judgment of the Court of Claims.

50 Mich App 147; 212 NW2d 808 (1973) reversed.

#### OPINION OF THE COURT

1. COMPROMISE AND SETTLEMENT—PUBLIC POLICY—ARBITRATION.

Public policy favors amicable settlement of disputes even though a failure to settle does not, because the agreed forum is arbitration, burden the courts; this principle applies to the construction of the payment provisions of the Motor Vehicle Accident Claims Act (MCLA 257.1122).

2. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS ACT—SETTLEMENT—INSURANCE—UNINSURED MOTORIST COVERAGE—POLICY LIMITS.

There is no statutory requirement that automobile insurance policy limits of uninsured motorist coverage be fully collected or credited to the Motor Vehicle Accident Claims Fund where a good-faith settlement is negotiated, whether with the tortfeasor or the injured person's own insurer (MCLA 257.1122).

3. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS ACT—INSURANCE—UNINSURED MOTORIST COVERAGE—AMOUNT "PAYABLE".

Before seeking to collect from the Motor Vehicle Accident Claims Fund, a policyholder must exert reasonable, good-faith efforts to recover from his insurer the amount "payable" by reason of the existence of a policy of insurance and the fund is entitled to credit for the amount actually paid by the insurer; when the amount actually "payable" by reason of the existence of a policy of insurance is determined, whether by adjudication, arbitration, or good-faith settlement, and that amount is paid, nothing more is "payable" under the policy (MCLA 257.1122).

4. Automobiles—Motor Vehicle Accident Claims Act—Uninsured Motorist Coverage—Settlement—Fraud.

The Motor Vehicle Accident Claims Fund's remedy for fraud or abuse where a person covered by uninsured motorist insurance settles with his insurer and attempts further recovery from the fund is to attack those settlements which appear improper by affirmatively showing collusion or some other species of fraud.

Concurring Opinion

J. W. Fitzgerald, J.

5. Automobiles—Motor Vehicle Accident Claims Act—Settlement—Insurance—Uninsured Motorist Coverage—Policy Limits.

*The rule that automobile policy limits of uninsured motorist coverage need not be fully collected or credited to the Motor Vehicle Accident Claims Fund where a good-faith settlement is negotiated honors the realities of the settlement process and is legally correct.*

Dissenting Opinion

M. S. Coleman, J.

6. Automobiles—Motor Vehicle Accident Claims Act—Settlement—Insurance—Uninsured Motorist Coverage—Policy Limits—Constitutional Law.

*The solution that automobile policy limits of uninsured motorist coverage need not be fully collected or credited to the Motor Vehicle Accident Claims Fund where a good-faith settlement is negotiated is fundamentally unfair and raises constitutional questions because, in a three-party contest, two can agree to any kind of settlement less than the policy limits of the insurance company and bind the third party to pay the difference.*

7. Automobiles—Motor Vehicle Accident Claims Act—Insurance —Statutes.

*The plain words of the Motor Vehicle Accident Claims Act seek to preclude a claimant and an insurer from agreeing to any kind of settlement less than the policy limits of an insurance policy and binding the Motor Vehicle Accident Claims Fund to pay the difference (MCLA 257.1122[2]).*

8. AUTOMOBILES—UNINSURED MOTORIST FUND—LIABILITY—INSURANCE.

> *The uninsured motorist fund is the fund of last resort and its liability is secondary; where an insurance carrier is primarily responsible its liability must be exhausted before recourse to the fund absence participation by the fund in a settlement between a claimant and the carrier.*

*Sommers, Schwartz, Silver, Schwartz, Tyler & Gordon, P. C.* (by *Jeffery N. Shillman*), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Joseph B. Bilitzke* and *Carl K. Carlsen,* Assistants Attorney General, for defendant.

LEVIN, J. Boisey and Mary Watts sustained personal injuries in an automobile accident with an uninsured motorist. Their insurance policy provided $10,000 uninsured motorist coverage for each person.

The Watts instituted arbitration proceedings pursuant to the policy. A settlement was reached, the arbitration proceedings were discontinued, and the Watts' insurance company paid the settlement amounts of $5,000 to Boisey Watts and $7,500 to Mary Watts.

Subsequently, the Watts obtained a judgment of $15,000 for Boisey Watts and $16,000 for Mary Watts in an action against the uninsured motorist. The Motor Vehicle Accident Claims Fund paid them the excess of each of those amounts over the $10,000 per person policy limit.

The Court of Claims held that the Watts were also entitled to payment from the Fund of the excess of the $10,000 policy limit over the amounts

of the settlements with their insurer, an additional $5,000 to Boisey Watts and $2,500 to Mary Watts.

The Court of Appeals (50 Mich App 147; 212 NW2d 808 [1973]), relying on *Brunner v Secretary of State,* 48 Mich App 535; 210 NW2d 786 (1973), reversed and held that the fund was liable only for the excess of the judgment over the policy limit.

The Motor Vehicle Accident Claims Act provides:

"(2) No payment shall be made out of the fund in respect to a claim or judgment for damages or in respect to a judgment against the secretary, of *any amount paid or payable* by an insurer by reason of the existence of a policy of insurance * * * .

"(3) No amount sought to be paid out of the fund shall be sought in lieu of making a claim or receiving *a payment that is payable* by reason of the existence of a policy of insurance * * * ." (Emphasis supplied.) MCLA 257.1122; MSA 9.2822.

The fund contends that the use of both "paid" and "payable" in the statute evidences a legislative intent to distinguish between the money potentially payable under the policy (the amount "payable") and the money actually paid in settlement with the insurer (the amount "paid"), and to prohibit payment from the fund of the difference, if any, between those amounts. When an insured settles with his insurer for less than the policy limit the difference remains "payable". Therefore, the fund is not liable for the amount which, had there been no settlement, the insured *might* have recovered under the policy. The fund finds support for its argument in clause (3) of the statute where the word "payable" is used again.

The fund further argues that any other interpretation would (i) allow plaintiffs to "[limit] their

recovery against the insurance company in order to claim against the Motor Vehicle Accident Claims Fund"; (ii) be a "bonanza" for insurance companies; (iii) render the term "payable" superfluous; and (iv) defeat the purpose of a *pari materia* amendment of the Insurance Code, requiring automobile insurance policies to include uninsured motorist coverage unless specifically rejected by the insured (MCLA 500.3010; MSA 24.13010), enacted to reduce claims against the fund.

The Watts counter that there is only one "amount" referred to in the statute; that amount is either "payable" or "paid" depending upon the point in time.

In *Green v Blicharski,* 32 Mich App 15, 19; 188 NW2d 113 (1971), the Court of Appeals rejected the fund's claim that the excess of the policy limit over the amount awarded by the arbitrator remained "payable":

> "It is immediately apparent that we are called upon to determine the difference between the meaning of the terms 'paid' and 'payable' as used in the statute * * * .
>
> "There is none. The amount 'payable' is the amount 'paid'. This, of course, is by reason of the arbitration clause in the policy. After the arbitration award was made according to the terms of the policy, there was nothing more 'payable'."

The fund seeks to distinguish *Green* on the ground that the plaintiffs in that case pursued their claim through award. In such a case, says the fund, it has less cause for concern that an insured, with the thought of obtaining additional amounts from the fund up to the limits of its liability, may exert less than full efforts against the insurer.

The fund raises the spectre of collusive low

settlements agreed to by insured persons and their insurers.

In *Brunner v Secretary of State, supra,* the settlement was not small. Plaintiff settled with his insurer for $8,500 under a policy providing $10,000 uninsured motorist coverage; he then obtained a judgment for $19,000 against the uninsured motorist.

In this case the settlements were not small and there is no reason to believe they were not made in good faith. Had the Watts not settled, the fund's liability might have been greater. If a person injured by an uninsured motorist obtains a greater amount in settlement than the arbitrator would award, settlement works to the advantage of the fund.

In *Steele v Wilson,* 29 Mich App 388, 395; 185 NW2d 417 (1971), the plaintiffs negotiated settlements with several potential third-party defendants, then commenced an action against the uninsured motorist and sought recovery from the fund. The Court of Appeals held that the actions against the uninsured motorist and the fund were not barred by the negotiated settlements:

"Public and judicial policies favor settlement. By and large, settlement represents a tactical evaluation of the situation by both parties. * * * For both parties, settlement eliminates the doubt and the possible harshness concomitant with an unfavorable verdict."

*Steele* rejected the fund's contention that it "should be the sole arbiter of whether or not settlement should be allowed. If we were to adopt [this] contention it would preempt both the plaintiffs' and the court's right to see to it that litiga-

tion is terminated amicably, speedily, and with minimum use of the expensive litigatory machinery."

Public policy favors amicable settlement even though a failure to settle does not, because the agreed forum is arbitration, burden the courts.

We conclude that where a good-faith settlement is negotiated, whether with the tortfeasor *(Steele v Wilson)* or the injured person's own insurer (this case), the statute does not require that policy limits be fully collected or credited to the fund.

Before seeking to collect from the fund, the policyholder must exert reasonable, good-faith efforts to recover from his insurer the amount "payable by reason of the existence of a policy of insurance". The fund is entitled to credit for the amount actually "paid" by the insurer. When the amount actually "payable by reason of the existence of a policy of insurance" is determined, whether by adjudication, arbitration or good-faith settlement, and that amount is "paid", nothing more is "payable" under the policy.

The fund's remedy for fraud or abuse is to attack those settlements which appear improper "by affirmatively showing collusion or some other species of fraud", *Hoogeboom v Carter,* 52 Mich App 677, 681; 218 NW2d 60 (1974) (Judge O'HARA dissenting from the application of *Brunner v Secretary of State, supra).*[1]

The Court of Appeals is reversed. The cause is

---

[1] Elaine Hoogeboom, a minor, was injured when struck by an uninsured motorist. She was insured under a policy which provided $10,000 uninsured motorist coverage. Through her guardian, Hoogeboom settled with her insurer for $6,000. The probate court approved the settlement. A judgment of $16,000 was obtained against the uninsured motorist. The Court of Appeals, relying on *Brunner v Secretary of State,* 48 Mich App 535; 210 NW2d 786 (1973), held that Hoogeboom could recover from the fund only the excess of the amount of the judgment over the policy limit.

remanded for the entry of a judgment affirming the Court of Claims. Costs to appellants.

T. G. Kavanagh, C. J., and Williams and J. W. Fitzgerald, JJ., concurred with Levin, J.

J. W. Fitzgerald, J. *(concurring).* As a Court of Appeals judge, I signed the opinion in *Brunner v Secretary of State,* 48 Mich App 535; 210 NW2d 786 (1973), which we overrule today. Upon reexamination of the area of the law at hand I am convinced that the rule set forth by Justice Levin honors the realities of the settlement process and is legally correct.

M. S. Coleman, J. *(dissent).* My objection is twofold.

1. The solution is fundamentally unfair and raises constitutional questions. In a three-party contest, two can agree to any kind of settlement less than the policy limits of the insurance company and bind the third party to pay the difference.

2. The plain words of the statute seek to preclude just such inequity:

MCLA 257.1122(2); MSA 9.2822(2) is clear:

"No payment shall be made out of the fund in respect to a claim * * * for damages * * * *of any amount paid or payable* by an insurer by reason of the existence of a policy of insurance * * * ." (Emphasis added.)

I agree with the arguments set forth by the Attorney General for the Uninsured Motorist Fund condensed in the majority opinion. In short, the Fund is the fund of last resort. Its liability is

secondary.[1] Plaintiffs' insurance carrier is primarily responsible and its liability must be exhausted before recourse to the Fund absent participation by said Fund.

I would affirm.

SWAINSON and LINDEMER, JJ., took no part in the decision of this case.

---

[1]See Blakeslee v Farm Bureau Mutual Insurance Co of Michigan, 388 Mich 464; 201 NW2d 786 (1972).