Claude H. RICHARD, Plaintiff-Appellee,

v.

Roy E. JOHNSON, Defendant-Appellant.

Civ. No. 9105.

Supreme Court of North Dakota.

Oct. 7, 1975.

Robert P. Brady, Asst. Atty. Gen., Bismarck, for defendant-appellant and the Unsatisfied Judgment Fund.

Duane H. Ilvedson, Nilles, Hansen, Selbo, Magill & Davies, Ltd., Fargo, for plaintiff-appellee.

PAULSON, Judge.

This is an appeal from an order of the Cass County District Court directing payment from the Unsatisfied Judgment Fund [hereinafter the "Fund"] of a portion of a judgment obtained by Claude H. Richard in an action to recover for personal injuries sustained as the result of an automobile collision which occurred between Richard's vehicle and a vehicle driven by Roy E. Johnson. Such order directed the state treasurer to pay to Richard from the Fund the sum of $2,422.75, representing the judgment obtained of $3,037.30 less $614.55 which Richard had already received under a policy of insurance he held with Nodak Mutual Insurance Company [hereinafter "Nodak"].

The facts in this case are simple and are not disputed. Richard was injured on October 8, 1972, in an automobile accident in south Fargo when a car driven by Johnson crossed over the centerline of the highway and collided with Richard's vehicle. At the time of the accident Johnson did not carry insurance, but Richard had insurance coverage from Nodak, which coverage included the mandatory $10,000 uninsured motorist coverage. § 26–02–42, N.D.C.C. Prior to commencing suit to recover for his injuries, Richard settled the uninsured motorist claim under his policy with Nodak for the sum of $500.00. In addition, Richard received $114.55 as reimbursement for his medical expenses from the insurance company.

Subsequent thereto, Richard commenced an action against Johnson to recover for his personal injuries and property damage. Pursuant to § 39–17–04, N.D.C.C., the Fund entered the case through the Attorney General, representing the Fund, after Johnson

failed to answer. The jury awarded Richard the sum of $3,037.30 in compensation for his personal injuries and judgment was entered accordingly.

Richard was unable to collect the amount of the judgment from Johnson and proceeded then under §§ 39–17–03 and 39–17–05, N.D.C.C., to obtain payment of his judgment from the Fund. It is undisputed that all preliminary statutory requirements for collection from the Fund have been complied with in this case. The district court ordered payment, pursuant to § 39–17–07(2)(b), N.D.C.C., of that portion of the judgment which had not yet been collected from Richard's own insurance carrier under the uninsured motorist provisions of such policy. The Fund then appealed.

■ The only issue raised on this appeal is whether or not recovery from the Unsatisfied Judgment Fund is precluded where a motorist receives, from his own insurance carrier under uninsured motorist coverage, an amount less than the minimum $10,000 liability coverage set forth by § 26–02–42, N.D.C.C.

The only limitations on payments to be made from the Fund, once all preliminary requirements are met to the satisfaction of the district court, are found in § 39–17–07, N.D.C.C., a statute which has just recently been amended by the North Dakota Legislature. However, at the time when this case arose § 39–17–07(1)(a), N.D.C.C., limited recovery to a maximum amount of $10,000 for bodily injury to one person in any one accident; and § 39–17–07(2), N.D.C.C., provided:

"2. The amount authorized to be paid shall be within the limits provided by this section, and shall be determined as follows:

"a. If the judgment creditor has effected collection of a portion of the judgment from any source, except as provided for in subdivision b of subsection 2 of this section, the fund is authorized to pay him the difference between the amount collected and the amount of the judgment, or ten thousand dollars, whichever is smaller. Provided, if the judgment creditor or creditors have collected an amount equal to the limits payable from the fund from the insurance or nonexempt assets of the judgment debtor, then they are precluded from recovery from the fund.

"b. If the judgment creditor has effected collection of a portion of the judgment from an uninsured motorist insurance policy or payment from the workmen's compensation bureau, then the amount collected from these sources shall be subtracted from the judgment before the procedure outlined in subdivision a of subsection 2 of this section is followed."

The language of § 39–17–07, N.D.C.C., is clear and explicit. *Pearson v. State Unsatisfied Judgment Fund,* 114 N.W.2d 257 (N.D.1962). Section 39–17–07 provided not only for a limitation on the Fund's liability, but established a formula which must be followed in calculating the amount which may be authorized for payment from the Fund. As applies in this case, calculation of the amount ordered to be paid from the Fund according to the provisions of § 39–17–07(2)(b), N.D.C.C., results in a conclusion that the Fund is liable to Richard for the amount ordered by the district court.

Nonetheless, the Fund contends that despite the mandatory, clear, and explicit language of § 39–17–07(2)(b), yet another limitation on the Fund's liability must be imposed by implication. That limitation which the Fund seeks to impose would restrict the availability of the Fund to those persons who had first recovered the maximum liability limit on their uninsured motorist coverage. As support for that position, the Fund cites primarily the Michigan case of *Brunner v. Austin,* 48 Mich.App. 535, 210 N.W.2d 786 (1973).

In the *Brunner* case, *supra,* the Michigan Court of Appeals concluded that there could be no resort to the Michigan Motor Vehicle

Accident Claims Fund until the maximum payment under the uninsured motorist coverage had been received by the claimant. That court based its conclusion on an interpretation of the particular language used by the Michigan Legislature in restricting the availability of the Motor Vehicle Accident Claims Fund. However, the Supreme Court of Michigan, in a decision published after oral argument in the instant case now before us, reviewed the same Michigan statutes and reached the opposite conclusion. In *Watts v. Michigan Dept. of St.,* M.V.A. C.F., Mich., 231 N.W.2d 43 (1975), the Michigan Fund also raised the spectre of collusive low settlements between an insured and the insurer. The Michigan Supreme Court, however, concluded, at 231 N.W.2d at 45, that:

"The Fund's remedy for fraud or abuse is to attack those settlements which appear improper 'by affirmatively showing collusion or some other species of fraud' . . . ."

Section 39–17–07(2)(b), N.D.C.C., makes only one reference to insurance, and, as applied in this case, provided that amounts collected from such a policy are to be subtracted from the judgment before the Fund is ordered to pay anything to the claimant. There is no reference in any provision of § 39–17–07 to a calculation based either upon the maximum liability limits of the insured's policy, nor on the methods used in arriving at or collecting that amount from the insurance carrier.

When the Legislature chose to restrict the availability of the Fund after the *Pearson* decision in 1962—which, in effect, permitted double recovery by the injured party—our Legislature did so in clear and explicit language by limiting recovery from the Fund to the amount of the judgment less the amount that the injured party had already received from his own insurance carrier. § 39–17–07(2)(b), N.D.C.C., S.L. 1967, ch. 315, § 1.

Furthermore, when the Legislature again saw fit to restrict the availability of the Fund, it did so in clear and explicit language by adding a new subparagraph to § 39–17–07, providing that:

"c. If the judgment creditor was covered by an uninsured motorist insurance policy at the time of the accident, then the maximum liability limit of that policy must first be subtracted from the judgment before the procedure outlined in subdivision a of this subsection is followed. Provided, if the maximum liability limit of the policy is equal to the limits payable from the fund, then no recovery from the fund shall be allowed." [S.L.1975, ch. 355, § 1.]

The 1975 amendment to § 39–17–07, N.D. C.C., however, does not affect this case because such amendment became effective after the date on which this cause of action arose. *Monson v. Nelson,* 145 N.W.2d 892 (N.D.1966).

In any event, this case seems quite similar to the New Jersey case of *Dodd v. Copeland,* 99 N.J.Super. 481, 240 A.2d 444 (1968), *aff'd* 52 N.J. 536, 247 A.2d 129 (1968). In the *Dodd* case, Dodd brought suit against two joint tortfeasors to recover for injuries sustained in an automobile accident. Shortly after commencing suit, he settled his claim against one of the defendants for the sum of $5,000.00. When New Jersey's Fund refused to settle, and the case was tried, Dodd received a judgment over and above the settlement made earlier. The Court in New Jersey held that the Fund was liable for the uninsured defendant's portion of the judgment, despite the fact that the settlement with the other defendant was for an amount below the maximum level of his liability insurance. The New Jersey Superior Court said that it is the general policy of the law to encourage good-faith settlements to avoid litigation. Where there is no showing that the settlement was made in anything but good faith, the Fund cannot escape liability just because the settlement was for an amount below the amount of the other's liability insurance.

In the instant case, the Fund contends that irrespective of the facts as developed at trial, this Court should issue a broad ruling which, in effect, declares that any settlement between an insured and his insurance carrier which is below the maximum liability limits of the policy is made in bad faith. This, the Fund says, would be giving effect to the true intent of the Legislature in adopting mandatory uninsured motorist coverage.

In view of the unequivocal language of § 39–17–07, N.D.C.C., however, the Court cannot adopt the Fund's position. *Pearson v. State Unsatisfied Judgment Fund, supra.* In interpreting statutes, it is a rule of construction that the words used are to be given their plain, ordinary and commonly understood meaning. *Tormaschy v. Hjelle,* 210 N.W.2d 100 (N.D. 1973). Furthermore, where a statute is clear and free of all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. § 1–02–05, N.D.C.C.

Section 39–17–07, N.D.C.C., does not provide for any adjustment to the formula contained in such statute, but, instead, is mandatory in nature, setting forth a specified procedure which the courts must follow in authorizing payments from the Fund. No room is left for adjustments to that formula, in the absence of any particularized showing of bad faith or fraudulent conduct on the part of the principals involved in the settlement.

Therefore, the order of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.